THE STATE OF OHIO, APPELLEE, *v.* BARKER, APPELLANT.

[Cite as State v. Barker (1978), 53 Ohio St. 2d 135.]

(No. 77-296—Decided February 22, 1978.)

Mr. *Michael DeWine,* prosecuting attorney, and *Mr. William F. Schenck, Jr.,* for appellee.

*Brandabur, Campbell, Finlay, Johnson, McCormick & Weckstein Co., L. P. A., Mr. J. Timothy Campbell* and *Mr. Larry B. Morris,* for appellant.

Locher, J.

## I.

Appellant, in his first four propositions of law, contends that his confession and the fruits obtained therefrom were improperly admitted in evidence. This contention is premised upon several asserted reasons. First, appellant alleges that the police failed to properly advise him of his constitutional rights, pursuant to the mandate of *Miranda* v. *Arizona* (1966), 384 U. S. 436, by not explaining the exact meaning of his rights. Secondly, appellant claims he was illegally arrested without probable cause at 10:30 a. m. on January 3, 1975. Thirdly, the entirety of the circumstances reveals the involuntary nature of appellant's confession.

Resolution of this contention necessitates examining the events leading to appellant's confession. In 1974, appellant was twice contacted by the police concerning the murder of Karen Miller. Then, on January 2, 1975, the Chief of Detectives of the Greene County sheriff's department telephoned appellant to request that he come in the

following day for an interview. Appellant indicated that he would be present. However, at approximately 10:00 a. m., appellant phoned the sheriff's department, stating that his car was disabled, leaving him without a viable means of transportation. An arrangement was concluded whereby a sheriff's car was sent, pursuant to appellant's instruction, to a Sohio station in Dayton to transport him to the Greene County sheriff's department.

Upon appellant's arrival, Detective Sergeant Norman Crosswhite read the *Miranda* warnings to appellant and further handed him a pre-interview form, which reiterated the warnings, to read and then sign before questioning the appellant. This form was signed by the appellant. Detective Crosswhite then spoke with the appellant until a cessation at 11:30 a. m. for lunch. Thereafter, they journeyed to London, Ohio, for the administration of a polygraph examination. Returning to the sheriff's department, appellant had a 15 or 20 minute conversation with the sheriff, at approximately 2:00 p. m. Afterwards, Detective Crosswhite again conversed with appellant and informed him of the existence of evidence implicating appellant in the murder of Karen Miller. This discussion culminated in appellant's confessing to the murder of Karen Miller, at approximately 5:30 p. m.

Only after this admission did appellant state for the first time: "I guess, I can't go now." Detective Crosswhite replied: "No, sir, you can't." Appellant was then incarcerated in the county jail. A stenographic statement of appellant's reiterated confession was taken later that evening. A second statement was transcribed the following day, wherein appellant reaffimed his prior statement and indicated the location of the murder weapon.

Appellant's assertion that he was arrested on the morning of the third, not after the confession as contended by appellee and thus without probable cause, is not premised upon any statements prior to the confession that appellant was under arrest or not free to leave. Instead, appellant asserts that the 7½ hours of interrogation and

the receipt of his constitutional rights immediately upon arrival at the sheriff's office evince the fact of his arrest at 10:30 a. m. We are unable to concur with appellant in such a conclusion under the instant facts.

The word "arrest" is derived from the French "arreter," meaning to stop or stay, as signifies a restraint of a person. *Alter* v. *Paul* (1955), 101 Ohio App. 139, 141. An arrest occurs when the following four requisite elements are involved: (1) An intent to arrest, (2) under a real or pretended authority, (3) accompanied by an actual or constructive seizure or detention of the person, and (4) which is so understood by the person arrested. *State* v. *Terry* (1966), 5 Ohio App. 2d 122, 128, citing *State* v. *Milam* (1959), 108 Ohio App. 254, 268; see, also, 5 American Jurisprudence 2d 695, Arrest, Section 1, and 6A Corpus Juris Secundum 99, Arrest, Section 43.

In the instant cause, appellant voluntarily came to the sheriff's office. At no time prior to appellant's confession did any officer convey an intention to arrest the appellant. Furthermore, there was testimony which indicated that appellant was free to leave until his confession. In fact, appellant, himself, before his confession, apparently never thought he was under arrest as exemplified by his exclaiming after his confession: "I guess, I can't go now," Plainly, these facts do not satisfy the four requisites. Moreover, the facts fail to equate with the "common" definition of arrest (see *United States* v. *Bonanno* [S. D. N. Y., 1960], 180 F. Supp. 71, 78).

Appellant next assails the admission of his confession and the fruits thereof, alleging the inadequacy of the *Miranda* warnings given to him. A similar contention has previously been addressed by this court.[1] In *State* v. *Edwards* (1976), 49 Ohio St. 2d 31, 39, this court stated:

---

[1]"In his second proposition of law, appellant complains that '[t]he mere reading of the *Miranda* rights to the accused who purports to understand them and then purportedly waives his right to remain silent is not in compliance with the law.'" *State* v. *Edwards* (1976), 49 Ohio St. 2d 31, 37.

"*Miranda* does not require a police officer to ask the defendant whether he wants an attorney. He need only inform the accused, as was done here, that the accused has a right to a retained or appointed attorney. Moreover, the defendant was 21 years old, a high school graduate, and able to understand the English language. In being asked whether he understood his rights, he responded affirmatively. He never asked for an attorney."

As has been previously stated herein, appellant, upon his arrival at the sheriff's office, was read the *Miranda* warnings. He was then handed a form to read, which reiterated the warnings, and requested to sign the form. The signed form was presented at the *suppression* hearing. Furthermore, the Court of Appeals stated that appellant, during this procedure, specifically stated that he did not want an attorney, that he understood the rights delineated by the *Miranda* warnings and that he waived them.

Appellant's receipt of the *Miranda* warnings before his first confession and at least four times thereafter is uncontradicted. No claim of a failure to understand these warnings upon the appellant's part has been asserted; instead, appellant would have this court mandate a needless redundancy of reading plus explaining the warnings, regardless of appellant's comprehension of his rights when read. We are constrained to reject this superfluous proposal.

Lastly, appellant states that the totality of the circumstances rendered his confession involuntary. This court, in the second paragraph of the syllabus in *State* v. *Edwards, supra* (49 Ohio St. 2d 31), set forth the accepted test for determining the character of a confession:

"In deciding whether a defendant's confession is involuntarily induced, the court should consider the totality of the circumstances, including the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of

physical deprivation or mistreatment; and the existence of threat or inducement.''

A perusal of the record reveals that both the trial court's and the Court of Appeals' determinations of the voluntary nature of appellant's confession were justified. The fact that appellant's admission was elicited after questioning by the police is merely one of the circumstances, which is to be taken into account in determining if his inculpatory statement was voluntary.[2] The appellant, as heretofore stated, came voluntarily to the sheriff's office, whereupon he was given and waived his rights.[3] Appellant was of majority age and a high school graduate. Although he was in association with the police for slightly more than seven hours, the questioning was neither continuous nor coercive. Furthermore, there was no evidence of physical deprivation or mistreatment. The record can support only the conclusion that the confession was not induced by duress, intimidation, or other improper influences and, therefore, was voluntary and admissible. Appellant's first four propositions of law are overruled.

### II.

The next proposition of law advanced by appellant, No. 5, proposes that the taking of hair samples from the body of the individual can only be done through the voluntary agreement of the person from whom said hair samples are removed fully knowing his right to refuse.

This argument was considered and rejected in *Schneckloth* v. *Bustamonte* (1973), 412 U. S. 218, where-

---

[2]"* * * At one end of the spectrum is the acknowledged need for police questioning as a tool for the effective enforcement of criminal laws. See *Culombe* v. *Connecticut* * * * [(1961) 367 U. S. 568], at 578-580. Without such investigation, those who were guilty might wholly escape prosecution, and many crimes would go unsolved. In short, the security of all would be diminished. *Haynes* v. *Washington*, 373 U. S. 503, 515. * * *" *Schneckloth* v. *Bustamonte* (1973), 412 U. S. 218, 225.

[3]Receipt of the *Miranda* warnings is a factor to be considered in determining the voluntary nature of the confession.

in Justice Stewart, in writing for the majority, stated, at pages 248-249:

"* * * We hold only that when the subject of a search is not in custody and the State attempts to justify a search on the basis of his consent, the Fourth and Fourteenth Amendments require that it demonstrate that the consent was in fact voluntarily given, and not the result of duress or coercion, express or implied. Voluntariness is a question of fact to be determined from all the circumstances, and while the subject's knowledge of a right to refuse is a factor to be taken into account, the prosecution is not required to demonstrate such knowledge as a prerequisite to establishing a voluntary consent. * * *"

Viewing the totality of the circumstances and considering appellant's knowledge of the right to refuse as only one factor, the record is void of any indication that the consent to the taking of a hair sample was other than voluntarily given. This proposition of law is without merit.

### III.

Appellant next urges that the showing of only one photograph of himself to Burt McCarty, an identifying witness, after said witness had independently identified the appellant, constitutes a tainting of a previous identification and any subsequent in-court identification is inadmissible. In *State* v. *Perryman* (1976), 49 Ohio St. 2d 14, this court accepted the standard formulated in *Simmons* v. *United States* (1968), 390 U. S. 377, stating, in the second paragraph of the syllabus:

"Convictions based on eyewitness identification at trial, following a pre-trial identification by photograph, will be set aside only if the photographic identification procedure is so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification."

This court, after review of the record, does not find appellant's contention persuasive. Mr. McCarty saw the appellant at the Foto Fair booth on the 24th, and the

next day, after hearing about the murder, reported to the sheriff's department what he had seen. On the 28th, Mr. McCarty viewed numerous photos of possible suspects without making an identification. He then assisted the sheriff's department in preparing a composite of the man he had seen. Later that evening, Mr. McCarty went through several Beavercreek High School annuals, wherein he discovered appellant's photograph and reported this to the sheriff's department. Only after this had occurred was the witness shown the single photograph of the appellant, on the 29th.

Reviewing the facts, we reject appellant's contention. The evidence does not indicate an identification procedure so "impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification" (*State* v. *Perryman, supra*) but plainly reveals that the witness' identification was based upon his independent observation and recollection of the appellant. *State* v. *Jackson* (1971), 26 Ohio St. 2d 74.

## IV.

For his seventh proposition of law, the appellant proposes the following:

"When the aggravating circumstance of 'escape from detection' is charged against a defendant in an aggravated murder indictment, there must be another crime, separate from the aggravated murder, charged and proven, from which said defendant is escaping detection."

Appellant contends that the specification, "escape from detection," was improper for the only offense with which he was charged was aggravated murder and that it has not been alleged or proved that he committed *another offense*. The appellant was charged by indictment with the aggravated murder of Karen Miller. The indictment set forth three specifications: (1) That the offense was committed for the purpose of escaping detection for another offense; (2) the offense was committed while the appellant was committing or fleeing immediately after committing the kidnapping; and (3) the offense was com-

mitted while the appellant was committing or fleeing immediately after committing rape.

Assuming, *arguendo*, that appellant's contention is correct, this does not necessitate either a reversal of the conviction or a negation of the finding of guilty with specifications. Appellant was found guilty of all three specifications. The reversal urged by appellant, if accepted, would still leave the appellant convicted of the two other aggravating circumstances. Furthermore, the exclusion of this specification at the trial would have had little, if any, likelihood of changing the result. See *Chapman* v. *California* (1967), 386 U. S. 18. Accordingly, appellant's seventh proposition is rejected.

### V.

Appellant next advances the argument that the trial court erred in allowing Dr. S. Shamsi, the pathologist, to testify, over appellant's objection, to one of the ultimate facts to be determined by the jury, *i. e.*, that the victim was raped. The objectionable segment of Dr. Shamsi's testimony concerned his statements that the bruises in the vaginal area indicated a "forceful act" or a "forceful sexual act or attempted sexual act."

After the direct testimony of Dr. Shamsi, the trial court, in chambers, considered appellant's motion for a mistrial and his request for instructions directing the jury to disregard the doctor's opinion that the bruises indicated a "forceful act" or a "forceful sexual act." The trial court instructed the jury that the doctor could testify to the conclusions that the bruises were the result of force and that the existence of sperm in the vagina indicated sexual relations, but he could not conclude that these factors indicated a forceful sexual act or an attempted sexual act.

The Court of Appeals rejected this proposition, stating that, assuming, *arguendo*, the testimony was in error, the trial court's jury instruction was curative. See *State* v. *Lewis* (1970), 22 Ohio St. 2d 125, 136; *Mimms* v. *State* (1866), 16 Ohio St. 221. Furthermore, the court found that

the term, "forceful sex[ual] act," is not a connotation of the term, "rape." Rape is defined in R. C. 2907.02 as sexual conduct wherein the offender purposely compels submission by force or threat thereof. Thus, the Court of Appeals stated that, although the bruises are indicative of a forceful act, they do not necessarily imply sexual activity. Finding the reasoning of the lower court compelling, we reject appellant's eighth proposition.

## VI.

Appellant's proposition that the testimony of the state's rebuttal witness was improper as constituting evidence in chief is without merit.

The appellant's wife, in attempting to establish an alibi, testified that she and two others were with her husband on the night of the murder. Responding to a question, appellant's wife stated that she could recall the specific night because of returning a book to the library that same evening. However, she additionally stated that she had taken out two books, the one returned being one of the two; that she had not taken out any others; and that she had not taken a book out one day and returned it on the next. The state's witness testified that the library records showed that the wife, during the months of August through November, had only taken books out on October 23.

The record is absent any showing of abuse of discretion in admitting rebuttal testimony. Instead, it shows that the questioned testimony definitely disputes the wife's statement as to how she recalled the specific date and thus was relevant to the issue of whether she was mistaken as to the night spent with the appellant. Not finding the required patent abuse of discretion in admitting this testimony, the court rejects appellant's ninth contention. See *Cities Service Oil Co.* v. *Burkett* (1964), 176 Ohio St. 449; *Holt* v. *State* (1923), 107 Ohio St. 307; *State* v. *Vails* (1970), 22 Ohio St. 2d 103, 106.

## VII.

In his proposition of law No. 10, appellant pleads er-

ror in an abuse of discretion by the trial court in permitting an exhibit, the victim's brassiere, to go to the jury after it had been altered from its original condition by an in-court experiment performed by the prosecutor.

The victim's brassiere was found (adjacent to Trebein Road on October 30, 1974) in a damaged condition, with one eye, clip or hook missing. This brassiere was admitted in evidence, and, in his final argument, the prosecutor, in attempting to demonstrate the amount of force which would be required to tear loose one of the hooks, inadvertently tore off another hook. This is the alteration upon which appellant's tenth proposition is premised.

The admission of exhibits rests in the sound discretion of the court. Prior to the alteration, the jury had both seen the brassiere and heard the testimony of at least three witnesses as to its former condition. Further, the trial judge, prior to allowing this exhibit to go to the jury, instructed them as to the fact that it had been altered. This court is unable to discern either any prejudice to the appellant or an abuse of discretion in allowing this altered exhibit to go with the jury in their deliberations, where the alteration occurred in the presence of the jury and the judge admonished the jury as to that fact. Proposition of law No. 10 is without merit.

### VIII.

Appellant's proposition of law No. 11 reads:

"It is error for the court to charge, over objection of counsel, that an element of the offense of a violation of Section 2903.01(B) is an attempt to commit the crime of kidnapping or an attempt to commit the crime of rape when attempt was not in any way alleged in the indictment, bill of particulars or any other information provided to the defendant and where there was no proof thereof at trial."

The alleged error lacks substance, being both moot and harmless. First, although the court did refer to the term "attempting to commit," the court, later in its instruction, told the jury that, if they found the state fail-

ed to prove that the killing was done while committing the rape or kidnapping or fleeing thereafter committing said offenses, they were to consider if the state proved the lesser crime of murder.

Speculation as to whether the jury conceived that they possessed the option of finding appellant guilty of attempt because of the inherent conflict in the jury instruction need not be engaged in by this court. Appellant was not convicted of attempt (if he would have been, R. C. 2929.04[A][7] would still have mandated the result of guilty of aggravated murder), but was found guilty by the jury of the charges set forth in the indictment. The jury verdict reads as follows:

"We, the jury in this case, duly impaneled and sworn and affirmed, find the Defendant Kenneth Ray Barker guilty of violation of O. R. C. Section 2903.01(B) (aggravated murder), in manner and form as he stands charged in the indictment."

Accordingly, appellant's eleventh allegation of error is not substantiated.

## IX.

Advancing three propositions previously considered by this court in other cases, appellant seeks reversal based upon several alleged errors. In his twelfth proposition, appellant claims error in that the trial court instructed the jury that the appellant had the burden of establishing that, by reason of drugs, his mind was in such a condition that he was not capable of forming a purpose to murder.

This court has normally adhered to the rule that it will refuse to consider questions which defendant failed to raise in the court below. A perusal of the record reveals that this proposition is being advanced for the first time before this court. In *State* v. *Wallen* (1971), 25 Ohio St. 2d 45, 46, this court, in a *per curiam* opinion, in the affirmance of a first degree murder conviction, stated:

"* * * [W]e find no reason to even consider them [allegations of error] on their merits because appellant

failed to raise them at his trial and in the Court of Appeals below.

"It is the policy of this court, from which we are presently disinclined to deviate, to refuse to consider such questions. *State* v. *Jones* (1965), 4 Ohio St. 2d 13, 211 N. E. 2d 198. To entertain such questions now would effectively permit appellant to bypass consideration of those questions by the trial court, or the Court of Appeals."

Accordingly, appellant's twelfth proposition of law is not well taken.[4]

His thirteenth proposition of law asserts that the death penalty, as prescribed by the Ohio statutes, is unconstitutional as it constitutes cruel and unusual punishment. This court having affirmed the statutory scheme for the death penalty as constitutional in *State* v. *Bayless* (1976), 48 Ohio St. 2d 73, and reaffirmed the holding in *State* v. *Bell* (1976), 48 Ohio St. 2d 270; *State* v. *Edwards* (1976), 49 Ohio St. 2d 31; and *State* v. *Lytle* (1976), 48 Ohio St. 2d 391, appellant's argument is rejected.

The seventeenth assignment of error is, essentially, that appellant was denied the equal protection of the laws when, under R. C. 2929.03(C), he was deprived of the opportunity to have a three-judge panel determine and impose the penalty which he would have been entitled to if he had chosen such a panel instead of a jury. This proposition was considered in *State* v. *Bell, supra,* and need not be reconsidered. This proposition of law is overruled.

## X.

Two of the remaining assertions of error, Nos. 14 and 15, relating to the burden of proof in the mitigation hearing are inextricably interwoven and, accordingly, will be resolved together. Both alleged errors are premised upon

---

[4]Consideration of appellant's twelfth proposition would also result in its rejection because of the principle espoused by the majority of this court, in *State* v. *Humphries* (1977), 51 Ohio St. 2d 95, that by appellant's failure to object to the jury instructions during his trial he waived this error. (This writer concurred in the judgment only in *State* v. *Humphries, supra,* for the reasons expressed therein.)

this court's previous decisions in *State* v. *Woods* (1976), 48 Ohio St. 2d 127, and *State* v. *Lockett* (1976), 49 Ohio St. 2d 48, wherein the burden of proof by a preponderance of the evidence was placed upon the defendant in the mitigation hearings. However, in *State* v. *Downs* (1977), 51 Ohio St. 2d 47, this court expressly overruled these prior decisions, as relevant herein, stating in paragraph one of the syllabus:

"The proceeding established in R. C. 2929.03 and 2929.04 for imposing sentence for a capital offense is not an adversary proceeding and, under the provisions of R. C. 2929.03(D) and (E), and R. C. 2929.04(B), neither the defendant nor the prosecution is required by statute to offer testimony or other evidence of mitigating circumstances. * * *"

Having overruled these prior decisions, we find no reason to consider appellant's assertion that the placement of the burden of proof upon the defendant in the mitigation hearing, as stipulated by *State* v. *Woods* and *State* v. *Lockett, supra,* was violative of the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

This court's decision in *State* v. *Downs, supra,* additionally is dispositive of appellant's fifteenth proposition of law. Relying upon *State* v. *Lockett* and *State* v. *Woods, supra,* appellant contends that the trial court mistakenly held that no one had the burden of proof by the preponderance of the evidence at the mitigation hearing, thereby depriving him of the knowledge that he had the burden of proof and precipitating his failing "to quite probably" conduct the hearing in a different manner and tack. Under the doctrine espoused in *State* v. *Downs, supra,* we find no reversible error as to the trial court's conducting of the mitigation hearing.

### XI.

Appellant next urges that he established the fact that he was acting under a drug psychosis and further that the victim facilitated the crime, and thus the trial court

erred in not finding mitigating circumstances. After a perusal of the record, we are unable to state that the trial court, after utilization of the correct standard, committed error in not finding any mitigating circumstances. The claim of psychosis was confronted with the testimony of medical experts that appellant was not psychotic, further evidence that appellant was capable and did drive his car on the night of the murder, and also the contradictory fact of appellant's having defended himself by also asserting an alibi. As to the appellant's assertion of victim facilitation, we concur in the Court of Appeals' aptly phrased rejection:

"The appellant's other assertion that he proved that the victim induced or facilitated her own murder which is based upon inferences which he has drawn from some highly speculative evidence that the victim willingly entered his car is so specious as not to require comment."

This assignment of error is without merit.

## XII.

The eighteenth proposition of law states:

"It is error in the sentencing portion of a trial for a capital offense, which is adversary in nature, for the court to review a pre-sentence report which report contains non-admissible material as well as a recommendation of imposing a death penalty, which recommendation is completely beyond any authority of a pre-sentence investigative officer."

Apparently, this proposition has its genesis in appellant's misconception of the nature and purpose of the pre-sentence hearing. First, contrary to appellant's assertion, the proceeding for imposing a sentence for a capital offense established in R. C. 2929.03 and 2929.04 is not an adversary hearing. *State v. Downs, supra.* The purpose of the pre-sentence hearing is distinctly different from that of the trial. Guilt or innocence is not an issue, having previously been determined. During the hearing, the court is interested in acquiring a more thorough knowledge of the defendant's character and history. The

court is required by R. C. 2929.03 to order a pre-sentence report. A hearing is held, at which the trial court must consider the report, other reports, testimony or other evidence, and even statements not made under oath by the offender. *State* v. *Downs, supra,* paragraph three of the syllabus. In the instant cause, the report was compiled, submitted to and considered by the trial court. The contention that the report contained material inadmissible at the trial and was thus improperly considered at the hearing is directly opposite to the nature and purpose of the hearing, as expressed in *State* v. *Downs, supra.* The trial judge can consider information that would have been inadmissible at trial.

The recommendation of the imposition of the death penalty was not within the scope of the investigator. However, it was merely harmless error, because the death penalty was already mandatory unless the trial court found mitigating circumstances. We have previously examined the proceedings of the mitigation hearing and have found no prejudicial error. This assignment of error is accordingly overruled.

## XIII.

The last of appellant's myriad assertions of error is that the trial court erred in not granting his motion for a new trial after the conviction as a result of an anonymous letter received by appellant's family, declaring that the author was responsible for Karen's murder.

In *State* v. *Williams* (1975), 43 Ohio St. 2d 88, this court, in the second paragraph of the syllabus, espoused the applicable standard:

"The allowance of a motion for a new trial on the grounds of newly discovered evidence is within the competence and discretion of the trial judge; and in the absence of a clear showing of abuse such decision will not be disturbed."

And further referring to the limited scope of review of the trial judge's decision, the court, at page 93, quoted

from *State* v. *Lopa* (1917), 96 Ohio St. 410, 411, the following:

" 'The granting of a motion for a new trial upon the ground of newly discovered evidence is necessarily committed to the wise discretion of the court, and a court of error cannot reverse unless there has been a gross abuse of that discretion. And whether that discretion has been abused must be disclosed from the entire record.' "

Application of this standard to the cause *sub judice* necessitates the rejection of appellant's nineteenth proposition. The denial of a new trial was supported by the evidence at the trial, including appellant's confessions. On the other hand, the correspondence was anonymous and no evidence was entered to indicate its composer. The record was thus void of indication that the denial of a new trial was a gross abuse of discretion.

Appellant's final proposition of law, being without merit, is rejected. Accordingly, the judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

O'NEILL, C. J., HERBERT, CELEBREZZE, W. BROWN, P. BROWN and SWEENEY, JJ., concur.