THE STATE OF OHIO, APPELLANT, *v.* ROHR, APPELLEE.

(No. 17-87-3—Decided September 1, 1988.)

*Michael Hiener,* prosecuting attorney, *Anthony J. Celebrezze, Jr.,* attorney general, and *John K. McManus,* for appellant.

*Peter R. Van Arsdel,* for appellee.

COLE, J. This is an appeal by the state of Ohio from a decision of the Sidney Municipal Court granting a motion to suppress.

Officer Brian Landrum, a game protector, was patrolling a hunting area when he observed a pickup truck stopped on Botkins Road with three occupants therein. The officer observed two shotguns sticking up in the air inside the cab of the truck.

The driver made a rapid motion with his right hand near one of the shotguns which was between him and one of the passengers. It appeared to the officer that the driver was ejecting shells from the shotgun and this aroused his suspicion.

The officer approached the truck and requested to see the hunting licenses of the three occupants, whereby the driver and one of the passengers produced them. However, the defendant, James A. Rohr, turned and the officer observed that he did not have his license pinned on his back.

Officer Landrum requested that Rohr step out of the truck and inquired whether the shotgun he was holding was loaded. The officer checked the gun and found it to be loaded, whereupon he removed the shells. The officer requested that Rohr return to his car with him where he was read his *Miranda* rights and issued two citations for hunting without a license and hunting without a special deer permit.

The defendant made a motion to suppress based on lack of probable cause to stop and arrest and the trial court granted such motion. It is from this decision that the state now appeals asserting three issues for review which we will consider as one assignment of error, *i.e.,* that the trial court erred in granting appellee's motion to suppress.

The issues of review are stated as follows:

"Officer Landrum had reasonable grounds to stop and question defen-

dant-appellee pursuant to O.R.C. 1531.13, 1533.11, and 1533.67, and for investigative purposes. Therefore, pursuant to an investigative stop, the evidence seized was not unlawfully seized, and should not be suppressed.

"The automobile exception to the Fourth Amendment warrant requirement permitted the arrest of defendant-appellee, and the search of the vehicle was fully lawful.

"Officer Landrum was authorized to seize the items pursuant to the plain view doctrine."

Officer Landrum observed a truck, which was parked, that had two shotgun barrels sticking up in the air. He then observed the driver making a motion with his right hand near the shotgun and he thought the driver "jacked a couple of shells out of the shotgun."

These observations by the officer made him suspicious, whereby he approached the truck and asked to check the occupants' hunting licenses and deer tags. The officer did not stop the truck but rather approached an already stopped vehicle to determine if the occupants were properly licensed to hunt.

The authority of Officer Landrum to check for hunting licenses and special deer permits is authorized by statute. R.C. 1533.14 states in pertinent part:

"Each person shall, while hunting or trapping on the land of another, carry his hunting license with him and exhibit it to any game protector, constable, sheriff, deputy sheriff, or police officer, or owner or person in lawful control of the land upon which he is hunting or trapping, or to any person. Failure to so carry or exhibit such license constitutes an offense under this section. * * *"

R.C. 1533.11 states in pertinent part:

"Each person shall, while hunting deer or wild turkey on lands of another, carry his special deer or wild turkey permit with him and exhibit it to any enforcement officer so requesting. Failure to so carry and exhibit such permit constitutes an offense under this section. * * *"

Upon the officer's request for the occupants' hunting licenses and special deer permits the driver and one passenger so displayed them. The defendant-appellee, Rohr, turned and the officer observed, "[h]e didn't have anything on his back as far as a hunting license or deer tag."

Under R.C. 1533.14 hunters are required to wear their license and deer tag on their back. The statute states in pertinent part:

"Each person, while hunting or trapping on the land of another, shall wear on the back of his outer garment, between his shoulders, a tag bearing his hunting license number in figures easily visible and legible and at least one inch in height. * * * Failure to wear the tag issued for the license in effect while hunting or trapping constitutes an offense under this section. * * *"

The discovery by Officer Landrum that Rohr did not have the proper license and deer permit to hunt was discovered by plain view. It was obvious to the officer upon Rohr's turning around that he was not displaying his hunting license on his back as required by statute. There was no search required for the officer to discover this violation.

This situation could be analogous to a situation where the officer saw hunters walking in a field without having their licenses displayed on their backs. The officer would have the statutory authority to stop these hunters and inquire about their licenses and issue a citation for not having a license or failure to display it according to the statute.

Upon the officer's learning that Rohr did not have a hunting license and deer permit he requested that he

step out of the truck. After Rohr stepped out of the vehicle the officer checked the shotgun which he was holding and found it to be loaded. Carrying a loaded shotgun in a vehicle is clearly a violation of R.C. 2923.16, which states in pertinent part:

"(B) No person shall knowingly transport or have a loaded firearm in a motor vehicle in such a manner that the firearm is accessible to the operator or any passenger without leaving the vehicle."

The discovery of the loaded shotgun was incident to the license check and did not constitute a search. Based on the officer's observation of the driver's motion with his right hand the officer had articulable facts and a reasonable belief that these shotguns were loaded while in the vehicle.

Also, it shall be noted that the officer stated that "when I got up to the car there was two twenty gauge slugs between his [the driver's] leg on the seat." The officer had previously stated that the shotgun next to the driver was a twenty gauge so the slugs on the seat would have been the proper ones for that gun.

The record does not demonstrate that the officer ever conducted a search of the vehicle or Rohr. Nor does the record anywhere support that Rohr was formally arrested. Rather, the officer only cited Rohr for failure to have a hunting license in violation of R.C. 1533.14 and failure to have a special deer permit in violation of R.C. 1533.11.

The citations were issued in lieu of arrest pursuant to Crim. R. 4(A)(3), which states:

*"By law enforcement officer without a warrant.* In misdemeanor cases where a law enforcement officer is empowered to arrest without a warrant, he may issue a summons *in lieu of making an arrest,* when issuance of a summon appears reasonably calculated to assure the defendant's appearance. * * *." (Emphasis added.)

Although a game protector has the statutory authority to arrest without a warrant any person who in his presence engages in a violation of the law, R.C. 1531.13, Officer Landrum issued only two summonses for the violations.

We have therefore a question as to whether, in fact, an arrest ever occurred for which probable cause was required. However, in *State* v. *Barker* (1978), 53 Ohio St. 2d 135, 7 O.O. 3d 213, 372 N.E. 2d 1324, the first paragraph of the syllabus defines the elements of an arrest:

"The existence of an arrest is dependent not upon the fact that a suspect who voluntarily comes in for questioning concerning possible involvement in a murder is immediately given the *Miranda* warnings, nor upon the period of the questioning, but upon the existence of four requisite elements: (1) An intent to arrest, (2) under real or pretended authority, (3) accompanied by an actual or constructive seizure or detention of the person, and (4) which is so understood by the person arrested."

Based on the transcript before us the trial court might well have found all these elements existed and therefore we assume an arrest, in fact, occurred.

However, as noted previously there was ample evidence of articulable facts stated by the arresting officer to justify an investigative stop as authorized by *Terry* v. *Ohio* (1968), 392 U.S. 1. Thereafter there occurred an escalating series of factual observations. In plain view of the officer was the obvious violation of the statute requiring exhibition of the hunting license. This led to the rediscovery of the shotgun again in plain view, leading to the inquiry as to whether the gun was loaded — an inquiry directed not to a violation of the statute but to the existence of a dangerous loaded

weapon. The appellee, however, was summoned for the license offense and that is the charge here involved. There was clearly just and probable cause to arrest for this offense.

The motion filed by appellee in the trial court reads as follows:

"Now comes defendant and moves this court to issue an order suppressing all evidence gathered as a result of the stop and arrest of the defendant for the reasons that the officer had no reasonable articulable suspicion of criminal activity to stop the defendant nor did he have probable cause to place the defendant under arrest.

"Defendant further moves this court to issue an order suppressing all statements made during the custodial interrogation of defendant for the reason that said statements were involuntary.

"Defendant requested an oral hearing on this motion."

We have dealt with two grounds which the appellee asserts for his motion and have determined that there was clear and undisputed evidence that there were articulable facts to justify a *Terry* investigation, if the defendant was in fact stopped (which is doubtful), and there were facts creating probable cause to believe the defendant had committed an offense.

It is, therefore, our conclusion that the judgment of the trial court in granting the motion to suppress on the specific ground stated in the journal entry of January 16, 1987, *i.e.,* "no reasonable articulable suspicion of criminal activity," was erroneous.

For this reason the judgment of the trial court is reversed and this cause is remanded to that court for further proceedings.

*Judgment reversed*
*and cause remanded.*

MILLER, P.J., and SHAW, J., concur.