The defendant-appellant, Thomas McLaughlin, (hereinafter "appellant"), appeals from the trial court's denial of his Motion to Suppress as it related to the reasonableness of the stop of the appellant.
The appellant and a companion were observed on October 1, 1997 in the middle of an empty parking lot located at Detroit and Belle Avenues sitting in a running car. The Lakewood police officer who observed the pair stated at the suppression hearing that although the car's lights were on, the car was not moving. The officer also stated that all of the establishments which were served by the parking lot were closed and that he thought it odd that a running car would be sitting in the middle of the parking lot with its lights on. When the police officer pulled into the parking lot to investigate, the appellant's companion voluntarily approached the officer and engaged him in conversation. The companion, who appeared intoxicated to the officer, told the officer that he and the appellant had just left "Pacers," a nearby tavern/eatery, where they had a "few drinks." The parking lot where this encounter took place was not designated for usage by Pacers patrons. The companion then asked the officer if he would cut the two a break and let them walk home as they lived nearby. As the companion was speaking with the officer, the appellant was driving his car at a very slow speed (slower than most people walk) along a fence on the side of the lot. At some point during this conversation, the appellant exited the car and came within ten to fifteen feet of the officer. The appellant and the officer never engaged in any conversation. After observing the demeanor of the appellant and his companion and concluding that they were both most likely intoxicated, the officer told the pair that he would permit them to walk home and to leave their car in the parking lot overnight.
Rather than taking the officer up on his generous offer, the appellant foolishly waited for the officer to pull away before getting behind the wheel of his car and attempting to drive home. The officer stated at the suppression hearing that after his initial encounter with the appellant and his companion, that he pulled around the corner into another parking lot for the purpose of adding one or two lines to a report that he needed to finish. After finishing the report in a period of one to two minutes, the officer headed eastward on Detroit. The officer noticed not only that the appellant's car was no longer in the parking lot, but, also, that it was heading northward on Belle towards Clifton Boulevard. At the time that the officer first observed the vehicle it had just crossed the railroad tracks, which are located approximately halfway between Detroit and Clifton. The officer pursued the appellant's vehicle at a high rate of speed northward on Belle. As the officer was proceeding down Belle in pursuit of the appellant's vehicle, he noticed the appellant's companion walking down the street in the same direction as the appellant was driving. Just as the officer was coming into close proximity with the appellant's vehicle, the appellant came to a stop and parked his vehicle in front of a house at 1273 Belle. The officer parked his cruiser behind the appellant's vehicle, exited the cruiser, and approached the appellant. The officer testified that as he was approaching the appellant, the appellant was also walking towards the officer, rather than towards the front door of the house.
The appellant informed the officer that he was parked right in front of his mother's house[1] and asked the officer for a break. The appellant also told the officer that he had just gotten news that he had lung cancer. The appellant then gave the officer reason to disbelieve this story by lighting up a cigarette in the officer's presence. The appellant later changed his purported diagnosis of lung cancer to emphysema.
The officer requested that the appellant perform a number of field sobriety tests. The appellant was unable to recite the alphabet past the letter "I," failed the Horizontal Gaze Nystagmus Test, and was unable to stand on one leg for an acceptable length of time. The officer placed the appellant under arrest for driving under the influence of alcohol (in violation of Lakewood Codified Ordinance 333.01 (a)). The officer testified that after he placed the appellant under arrest, the appellant's attitude turned from somewhat cooperative to hostile.[2]
At the police station, the appellant informed the officers administering the breathalyzer test that he felt he might have problems blowing hard enough into the machine to register an adequate reading because of his emphysema. Both officers witnessing the test felt that the appellant was intentionally not blowing into the Intoxilyzer 5000 up to his capabilities. The machine was not able to register an adequate reading because the breath sample provided by the appellant was "deficient." The officer administering the test treated this reading as equivalent to a refusal to take the test, which resulted in an immediate Administrative License Suspension. The officers never requested that the appellant agree to submit to a blood or urine test for the purpose of getting a true reading of his blood alcohol content.
The appellant's Motion to Suppress sought to suppress any evidence of the results of the blood alcohol test obtained from the deficient sample or testimony to the effect that the appellant refused the test and, also, sought to suppress any evidence from the appellant's initial encounter with the officer in the parking lot as the officer allegedly lacked a reasonable and articulable suspicion to stop the appellant at that point in time. The trial court granted the motion as it related to the results of the breathalyzer test only,[3] but denied the motion as it related to the reasonableness of the officer's initial "stop" of the appellant. The court reasoned that the arresting officer had a reasonable basis for investigating the reason that the appellant's car was parked in the middle of a parking lot at 1:00 a.m. and based upon what he learned from that investigation, the officer had a reasonable basis to stop the appellant once it became apparent that the appellant was driving his vehicle down Belle.
The appellant is herein appealing from the trial court's denial of the Motion to Suppress as it related to the reasonableness of the stop of the appellant. The appellant presents one assignment of error for our review:
 1. THE TRIAL COURT ERRED BY OVERRULING THE DEFENDANT/APPELLANT'S MOTION TO SUPPRESS AS IT RELATES TO THE REASONABLENESS AND ARTICULABLE SUSPICION TO STOP APPELLANT.
In reviewing a trial court's ruling on a motion to suppress, a reviewing court must keep in mind that weighing the evidence and determining the credibility of witnesses are functions for the trier of fact. State v. DePew (1988), 38 Ohio St.3d 275, 277;State v. Fanning (1982) 1 Ohio St.3d 19. Where there is substantial evidence to support the factual findings of the trial court, it will not be disturbed on appeal absent an error of law. DePew, supra.
The United States Supreme Court has defined three categories of police-citizen encounters: (1) a consensual encounter; (2) an investigatory stop; and (3) an arrest. Florida v. Royer (1982),460 U.S. 491. 501-507, 103 S.Ct. 1319, 75 L.Ed.2d 229.
It is well-settled that the Fourth Amendment is not implicated in the case of a consensual encounter. United States v.Mendanhall (1980), 446 U.S. 544, 553. 100 S.Ct. 1870,64 L.Ed.2d 497. Consensual encounters include many long-standing, routine police practices, which include approaching a person in a public place, engaging the person in conversation, requesting information from the person, examining the person's identification, and asking the person to search his or her belongings. Florida v. Rodriguez (1984), 469 U.S. 1, 4-6,105 S.Ct. 308, 83 L.Ed.2d 165. The hallmark of a consensual encounter is whether the police have restrained the person's liberty, by physical force or display of authority, in such a way that a reasonable person would feel free to walk away. Mendenhall,supra, at 544. The determination of whether a reasonable person would feel free to walk away is based on the totality of the circumstances of the case. Id.
In cases where the police-citizen encounter is such that a reasonable person would not feel free to leave, the encounter falls into the category of an investigative stop. Terry v. Ohio
(1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889. To warrant an investigative stop, a police officer "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Id. at 21. The "reasonable suspicion" needed to justify an investigative stop has been defined as something more than an "inchoate or unparticularized suspicion or hunch, but less than the level of suspicion required for probable cause."Terry, supra, at 27.
Factors to be considered when reviewing whether a seizure has occurred — or merely a consensual encounter — include: a threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person, the use of language or tone of voice indicating that compliance with the officer's request might be compelled, approaching the citizen in a nonpublic place, or blocking the citizen's path.Mendanhall, supra, at 554.
The third type of encounter involves a seizure that is equivalent to an arrest. To initiate such a seizure the police officer must have probable cause. Terry, supra. A seizure is equivalent to an arrest when: (1) there is an intent to arrest; (2) the seizure is made under real or pretended authority; (3) it is accompanied by an actual or constructive seizure or detention; and (4) it is so understood by the person arrested. State v.Barker (1978), 53 Ohio St.2d 135.
As was mentioned in the recitation of facts, the appellant's Motion to Suppress challenged not the propriety of the stop of the appellant after he pulled up in front of his mother's house, but the legality of the initial "stop" of the appellant and his companion in the empty parking lot. The appellant states that the mere fact that a car is sitting in a parking lot with its lights on is not enough to provide a police officer with sufficient articulable facts to justify an investigation.
Initially, this court concludes that the appellant's initial encounter with the arresting officer was not a "seizure" under the Fourth Amendment, but, rather, a consensual encounter. The appellant did not testify at the suppression hearing that he was not free to leave the parking lot or that he felt threatened by some show of force by the officer. In fact, the officer never got closer than ten to fifteen feet from the appellant and never asked any questions directly of the appellant. The arresting officer merely engaged the appellant's companion in conversation in a public place after observing the two sitting in a running car in an empty parking lot. Given the time of day, as well as the fact that the establishments which were served by the parking lot were long since closed, it was reasonable for the officer to suspect that a robbery, or other illicit activity, might be in progress. The officer did not "stop" the appellant's vehicle because it was already parked in a parking lot. Finally, we note that the appellant had no privacy expectation in an empty parking lot in which he had no ownership interest and where he was not a patron or business invitee of any of the establishments serviced by the parking lot.
This court, upon review of the entire record, finds, based on the totality of the circumstances, that the initial encounter between the appellant and the Lakewood police officer was a consensual encounter for which the officer did not need reasonable suspicion to approach the appellant and that the trial court did not err by denying the appellant's motion to suppress.
Conversely, we also find that even if the initial encounter had risen to the level of an investigatory stop, the unusual circumstances which presented themselves to the officer would have justified such a stop. The fact that the appellant and his companion were sitting in a running car with its headlights on in a business parking lot at 1:00 a.m. in an area which is certainly not unfamiliar with criminal activity, would have been sufficient specific and articulable" facts to give rise to a reasonable suspicion of criminal activity so as to justify an investigatory stop. State v. Gill (1994), 70 Ohio St.3d 150, Broadview Heightsv. Eiler (Dec. 29, 1994), Cuyahoga App. No. 67067, unreported.
Accordingly, the appellant's sole assignment of error is not well taken.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Lakewood Municipal Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
PORTER, A.J., and SWEENEY. JAMES D., J., CONCUR.
 _________________________________ MICHAEL J. CORRIGAN JUDGE
[1] The appellant was, in fact, parked right in front of his mother's house.
[2] The officer testified that on the way to the station the appellant was screaming that he was going to sue the officer and stated that "[he] should have kicked his ass instead of arresting him for DUI, the way they used to do things."
[3] Although the Intoxilyzer 5000 indicated that the sample provided by the appellant was deficient, it nonetheless registered a reading of .195 BAC. The trial court ruled that, while the results of the test would be suppressed, the issue of whether the appellant constructively refused to take the test by purposely not blowing hard enough into the machine "would be available for argument before the jury.