JOURNAL ENTRY AND OPINION
Defendant-appellant Kimanthi Polk (Polk; d.o.b. December 30, 1975) appeals from the trial court's refusal to suppress evidence on the basis that he was allegedly unlawfully detained in violation of his Fourth and Fourteenth Amendment rights. For the reasons adduced below, we affirm.
A review of the record on appeal indicates that on Tuesday, January 25, 2000, at approximately 2:30 a.m., members of the United States Drug Enforcement Agency Interdiction Task Force (DEA) in Cleveland, Ohio, received a communication from DEA personnel (to-wit, Detective Scott Groves) at Los Angeles International Airport (LAX) of a possible drug courier being on Continental Airlines flight 258 from LAX, which was then in flight to Cleveland Hopkins Airport. The LAX DEA described the courier as a tall, thin, African-American male in his mid-twenties, wearing a fluffy green and black down parka and a dark-colored back pack. Detective Groves also identified the suspect as using the name Kimanthi Polk and provided the time the flight was due to land in Cleveland. This information about the suspect was gathered by the LAX group from a female drug courier they had apprehended at LAX carrying 6.7 pounds of cocaine on her body and who claimed that Polk had been given a similar amount of drugs at the same time and place as she. LAX DEA attempted to find Polk at that time in LAX, but his flight had already departed LAX for Cleveland.
Officers from the Cleveland drug task force, who had gathered at Cleveland Hopkins Airport at approximately 5:30 a.m. to search out the suspect, observed the deplaning of the suspect's flight at its gate along Concourse A. The officers, Harrison, Gilchrist and Negron, observed the deplaning suspect from the description provided by LAX DEA, and observed the suspect, the only person on that flight who matched the LAX description, walk down the concourse with a carry-on bag, to-wit, a back pack. The suspect appeared to be uncomfortable as he looked around the area, walked using a herky-jerky fashion, in sort of a strange gait,[1]
kept adjusting the back pack, and was walking faster than, and passing, other passengers who had deplaned prior to him. The officers followed the suspect at close range for approximately three-quarters the length of the concourse. The officers then approached the suspect, identified themselves, and asked if they could speak to him as they continued walking. The suspect, who was Polk, agreed to speak to officer Harrison as they walked. When requested by Harrison, Polk showed Harrison his airline ticket, which was in the name Kimanthi Polk and which indicated that the ticket was paid for in cash. Harrison then requested that Polk produce some identification as they walked. Polk agreed and, with his hands shaking, he fumbled for the identification in his wallet and spoke to Harrison in a low voice without making eye contact with the officer. This California identification identified the person as Kimanthi Reece Polk. Harrison then returned the identification to Polk[2] and asked Polk about the nature of his trip to Cleveland. Polk hesitated, and when Harrison volunteered whether he was visiting, Polk answered yes. Harrison asked how long Polk intended to stay in Cleveland. Polk answered a week.
Harrison then asked Polk if her partner, Officer Gilchrist, could search Polk's carry-on bag, to-wit, the back pack. Polk stopped walking and immediately answered no. Polk then volunteered that Harrison might as well take me where you're going to take me. Tr. 19-20. Harrison asked Polk whether this meant that he would consent to a search of the back pack and a pat-down of his person; Polk responded no. At that point Harrison advised Polk that he was being detained. Polk testified that he was being detained and that he was not advised at that time that he was under arrest. Tr. 77. Officer Gilchrist testified that he placed his hand on Polk's elbow/triceps area, in between the arm and the torso, and began to escort Polk to a detention area within the airport. As he did so, his hand felt a large bulge on the inside of the back of Polk's coat. Tr. 48. Polk claimed that Gilchrist performed a pat-down search of the exterior of his clothing shortly after they entered the detention room. Tr. 75-76.
At the detention area, the officers began drafting a search warrant and its accompanying affidavit.[3] While there, Polk testified that he was told that he was being detained and was not searched until the search warrant was returned. Tr. 80. The search warrant affidavit described the suspect as Kimanthi Polk, six-one, 186 pounds, birth date 12/30/75. Tr. 31. The birth date information was gathered after Polk's detention. Tr. 31. The identifying information relayed by LAX DEA, to-wit, thin build, mid-twenties, carrying a dark-colored back pack and wearing a black and green parka, was not included in the warrant affidavit. Tr. 32.
Officer Gilchrist, upon a showing of probable cause, obtained the search warrant from the trial court for Polk and his carry-on bag, and returned to the airport with the warrant at approximately 10:30 to 11:00 a.m., about four hours after the detention of the suspect. Tr. 49-50, 66, 75. The warrant was executed at the holding area in the airport, and three separately packaged bundles in brick form of approximately one kilogram per bundle, containing a total of approximately 2,673 grams of cocaine, were found strapped to the small of Polk's lower back. Polk was then placed under arrest and advised of his constitutional rights.
Polk, a resident of Los Angeles, California, was indicted on March 1, 2000, on three counts: (1) possession of cocaine in an amount greater than 1,000 grams [R.C. 2925.11]; (2) preparation of drugs for sale [R.C.2925.07]; and, (3) possession of criminal tools [R.C. 2923.24], to-wit, $300 cash, cellular telephone.[4] his arraignment, Polk pled not guilty and was assigned counsel to represent him.
On March 23, 2000, Polk filed his motion to suppress evidence, arguing that the government agents did not have probable cause to initially detain him. The State filed its brief in opposition to this motion on September 6, 2000. On November 20, 2000, Polk filed with the trial court a memorandum in further support of his motion to suppress evidence.
The hearing on the motion to suppress evidence was conducted in open court on January 5, 2001. Officers Harrison and Gilchrist testified on behalf of the State. Polk testified on his own behalf. At the close of the hearing the trial court denied the motion.
On January 10, 2001, the date scheduled for the commencement of the trial, Polk withdrew his plea of not guilty and entered a plea of no contest to the charged offenses. He was sentenced to the following imprisonment: (1) 11 years total on count one; (2) 18 months on count two; (3) 12 months on count three; terms to run concurrently.
Polk filed his timely notice of appeal on January 31, 2001.
Polk presents the following lone assignment of error for our review:
 THE TRIAL COURT ERRED IN DENYING THE DEFENDANT'S MOTION TO SUPPRESS WHEN THE APPELLANT'S FOURTH AMENDMENT RIGHTS WERE VIOLATED BY HIS UNLAWFUL DETENTION WHERE THERE WAS A LACK OF REASONABLE SUSPICION.
In this assignment, appellant argues that his Fourth Amendment rights were violated when the law enforcement agents lacked a reasonable and articulable suspicion to conclude that Polk, in order to justify his purportedly illegal detention, was engaged in criminal activity.
There are three types of police-citizen contact in which Fourth Amendment guarantees are implicated. Florida v. Royer (1982), 460 U.S. 491,501-507, 75 L.Ed.2d 229, 103 S.Ct. 1319. These situations, consensual encounter, investigatory stop, and an arrest, were discussed in State v. Scott (Aug. 5, 1999), Cuyahoga App. No. 74352, unreported, 1999 Ohio App. LEXIS 3598 at 7-9, as follows:
The first type is a consensual encounter.
 Encounters are consensual where the police merely approach a person in a public place, engage the person in conversation and request information, and the person is free to answer or walk away. United States v. Mendenhall (1980), 446 U.S. 544, 553, 64 L.Ed.2d 497, 100 S.Ct. 1870. The request to examine a person's identification does not make an encounter nonconsensual. Florida v. Rodriguez (1984), 469 U.S. 1, 4-6, 83 L.Ed.2d 165, 105 S.Ct. 308. Nor does the request to search a person's belongings. Florida v. Bostick (1991), 501 U.S. 429, 115 L.Ed.2d 389, 111 S.Ct. 2382. The Fourth Amendment guarantees are not implicated in such an encounter unless the police officers have by either physical force or show of authority restrained the person's liberty so that a reasonable person would not feel free to decline the officer's requests or otherwise terminate the encounter. Mendenhall, 446 U.S. at 566. Moreover, law enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such criminal prosecutions. Royer, supra, at 498. Once a person's liberty has been restrained, the encounter loses its consensual nature and falls into one of the two other Supreme Court categories.
 The second type of encounter is that described in Terry v. Ohio (1968), 392 U.S. 1, 16-19, 20 L.Ed.2d 889, 88 S.Ct. 1868. This is the investigatory stop which is more intrusive than the consensual encounter, but less intrusive than a formal custodial arrest. The investigatory detention is limited in duration and purpose and can only last as long as it takes a police officer to confirm or to dispel suspicions. Id. A person is seized during an investigatory detention when, in consideration of all the circumstances surrounding the encounter, by means of physical force or show of authority a reasonable person would have believed that he was not free to leave or was compelled to respond to questions. Mendenhall, supra. Factors to consider when reviewing a seizure include: a threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person, the use of language or tone of voice indicating that compliance with the officer's request might be compelled, approaching the citizen in a nonpublic place, or blocking the citizen's path. 446 U.S. at 554.
 The third type of encounter involves a seizure that is equivalent to an arrest. To initiate such a seizure the police officer must have probable cause. Terry, supra. A seizure is equivalent to an arrest when (1) there is an intent to arrest; (2) the seizure is made under real or pretended authority; (3) it is accompanied by an actual or constructive seizure or detention; and (4) it is so understood by the person arrested. State v. Barker (1978), 53 Ohio St.2d 135, 372 N.E.2d 1324.
Considering the facts of this case, a consensual encounter occurred from the point of the officers' initial approach and questioning of Polk as they walked along the concourse until the point where Harrison announced that Polk was being detained. During this pre-detention period, Harrison testified that Polk was free to leave. At the point where Polk denied consent to search his person and back pack, Harrison announced that Polk was being detained and the situation changed to an investigatory stop/detention, which would trigger Polk's Fourth Amendment rights. That situation did not change, as attested by Polk himself when he testified that he was detained while in the detention room and was not arrested while he waited.
In order to justify a Terry-type investigatory stop/detention, it is required that the police have a reasonable and articulable suspicion of imminent criminal activity. Appellant's sole argument is to this issue. The totality of the circumstances indicate that this standard was met by the police that morning. The Cleveland officers had a detailed description of Polk, his carry-on luggage, and his outward attire from a known police source with the LAX DEA. Polk, according to the LAX DEA communication, which itself was gathered from an apprehended drug courier with personal knowledge of Polk and his planned interstate criminal activity, was suspected of transporting cocaine on his body while using a specific flight from Los Angeles to Cleveland. The Cleveland officers approached Polk using solely the detailed description provided by the LAX DEA and corroborated Polk's identity through identification provided by Polk as he walked down the concourse chatting to Harrison. If these facts do not demonstrate a reasonable and articulable suspicion of imminent criminal activity sufficient for an investigatory detention, nothing will.
Once placed under detention, Polk refused to permit the police to search himself or his effects. The Cleveland officers prudently observed Polk's non-consent to a search and took the necessary, and least intrusive step to confirm or dispel their suspicions of criminal activity, by seeking and obtaining a search warrant during the detention period. There is no indication in the record that the procurement of the search warrant was unnecessarily delayed by the Cleveland officers so as to extend the duration of the detention beyond the least amount of time needed for the officers to confirm or dispel their suspicions of criminal activity. Accordingly, Polk's Fourth Amendment rights were not violated by the investigatory detention.
Assignment overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
DIANE KARPINSKI, A.J., and TIMOTHY E. McMONAGLE, J.,, CONCUR.
[1] Officer Gilchrist testified at the motion hearing that narcotics officers look for things such as this in regard to persons carrying drugs on their bodies. Tr. 46.
[2] Polk testified at the motion hearing that his full name was Kimanthi Tyreese Polk. Tr. 68.
[3] The search warrant and affidavit were admitted into evidence as State Exhibit 7 at the motion hearing, see Tr. 29-30; however there are no exhibits contained in the record on appeal provided to this court.
[4] Also found in Polk's possession were personal papers, telephone cards, and a woman's girdle. See the May 18, 2000 State's response to a request for discovery.