{¶ 29} For the reasons stated below, I respectfully concur in part and dissent in part.
 {¶ 30} I agree with the majority's disposition of Culver's first and third assignments of error. As to Culver's second assignment of error, I would hold that Culver is entitled to judgment of acquittal on the charge of resisting arrest.
 {¶ 31} As an initial matter, it is important to point out that the primary piece of evidence documenting Culver's arrest is the MRV tape entered into evidence at trial. The video recording Culver's arrest reveals much more than indicated in the majority opinion. Culver was peaceably conversing with Officer Carney when Officer Crites approached Culver from the side to effectuate the arrest. Officer Crites grabbed Culver's hand from behind and quickly attached a handcuff. Culver is noticeably confused about what is happening. According to Officer Crites's trial testimony, Culver attempted to pull away at this point. That action is scarcely noticeable on the video. To pull away, however, is a natural reaction of a person who is startled by being grabbed from behind would show. In any event, Officers Crites and Carney immediately dropped Culver, face first, to the ground and kept him in that position for the next three minutes.
 {¶ 32} Culver remained squirming on the ground while the officers hit and pepper sprayed him. Culver was also unaware of why any of this was happening to him. For more than two minutes Culver lay on the ground under two larger officers, asking "what for" more than twenty (20) times. More than two minutes expired before one of the officers finally informed Culver of the reasons why he was being placed under arrest. Upon being informed of the reasons for his arrest, Culver promptly told the officers he would give them his arm if they would stop hitting him. Contrary to the majority's finding that Culver continued to resist, Culver cooperated with the handcuffing process after he was informed of the reasons for his arrest. Culver was handcuffed within a half minute of the officers' informing Culver of the reason for his arrest.
 {¶ 33} The Ohio Supreme Court, as the majority notes, has stated four elements necessary for an arrest: (1) an intent to arrest on the part of the arresting officer; (2) under real or pretended authority; (3) accompanied by an actual or constructive seizure or detention of the person; (4) which is so understood by the person arrested. State v.Barker (1978), 53 Ohio St.2d 135, 139 (citation omitted) (emphasis added).
 {¶ 34} In the present case, the necessary element that Culver understand what was happening to him is lacking. Although the magic words "you are under arrest" are not necessary to effectuate an arrest, a reasonable person in the detainee's position must feel that he is being seized by one under authority with an intent to arrest. State v. Foster,
11th Dist. No. 2000-T-0033, 2001-Ohio-8806, 2001 Ohio App. LEXIS 5840, at *14, quoting State v. Gaston (1996), 110 Ohio App.3d 835, 842. Here, Officer Crites grabbed Culver unaware as he was peaceably speaking with another officer. After a moment's hesitation on Culver's part, and without any word of explanation by the officers, Culver is thrown to the ground and set upon by both officers. I fail to see how any reasonable person in Culver's position could be expected to understand that he was being subjected to a "lawful" arrest.
 {¶ 35} The lead case cited to by the majority, State v. Fairbanks
(1972), 32 Ohio St.2d 34, holds that the failure to notify the accused of the cause of his arrest does not render the arrest illegal if he is notified of the offense for which he is charged soon after he is taken into custody. Id. at 41. Fairbanks is distinguishable on its facts. In rendering its decision, the court in Fairbanks cited to R.C. 2935.07, which provides that "[w]hen a person is engaged in the commission of a criminal offense, it is not necessary to inform him of the cause of his arrest." Id. The court then noted that, at the time of his arrest, the appellant in Fairbanks was fleeing police. Likewise, in State v. Mink
(Oct. 13, 1983), 2nd Dist. No. 8315, 1983 Ohio App. LEXIS 12124, the court noted that the arresting officer "acted for his own safety" when provoked by appellant's actions. Id. at *4. In Mink, the confrontation between the arresting officer and the detainee had already escalated to a point where the words "you are under arrest" were superfluous. Id. As the majority notes, the intent to arrest in that case had been adequately conveyed through the use of mace and bracelets. In the present case, there are no such extenuating circumstances that would justify the officers' failure to inform Culver of the charges against him when the arrest was initiated. Simply put, Culver was neither fleeing nor committing a crime at the time Officer Crites grabbed Culver's arm without stating that he was placing Culver under arrest or the reason for Officer Crites' aggressive action.
 {¶ 36} Finally, I must disagree with the implication in the majority opinion that mace and bracelets, alone, are an acceptable substitute for words in effecting an arrest. The use of force by peace officers in a society where violence is already endemic must be circumscribed by necessity. Where an officer is threatened, as in Mink,
or is engaged in pursuit of an offender, as in Fairbanks, the lack of the necessity to inform a suspect of the intent to arrest is readily cognizable. In the present case, however, Culver was not threatening the officers, was not engaged in the commission of a crime at that time, was not armed, and had voluntarily complied with all of the officers' prior requests. The unannounced manner in which the officers attempted to effect his arrest provoked reactive resistance on Culver's part. Since on the face of the videotape it is apparent that Culver did not understand the officers' initial intent in seizing him, his spontaneous resistance cannot sustain a conviction for resisting arrest. Accordingly, I would sustain Culver's second assignment of error.