~
### State v. Shaw
### Case No. 2580
### Clark County, (2nd)
### Decided January 3, 1990
[Cite as 1 AOA 106]

*Richard P. Carey, Assistant Prosecuting Attorney, 50 East Columbia Street, Springfield, OH 45502; Attorney for Plaintiff-Appellee,*

*James A. Doughty, 39 North Fountain Avenue, Springfield, OH 45502; Attorney for Defendant-Appellant.*

FAIN, J.

Defendant-Appellant John Shaw appeals from his conviction and sentence for Felonious Assault. Although we reject Shaw's other Assignments of Error, we agree with him that the trial court committed prejudicial error when it instructed the jury, over Shaw's objection, that it must first find him not guilty of Felonious Assault before it might consider the lesser included offense of Assault. Accordingly, the judgment of the trial court will be reversed, and this cause will be remanded for a new trial.

I

One day in October, 1988, Wanda Rinehart accepted a ride from Shaw. She needed a ride from Springfield to her home in London, Ohio. She sat in the front, passenger seat of the car driven by Shaw. Another young man, evidently by the name of Brett Brickles, sat in the back seat. Rinehart agreed to pay a sum, which she recalled as $2, for the ride. Concerning subsequent events, Rinehart testified as follows:

Q. And they began taking you to London. Is that true?
A. Yes.
Q. You never made it to London. Is that true?
A. No.
Q. You made it into London?

A. Yes.

Q. All right. Then what happened.

A. They turned around and started back the other way.

Q. Did they say why?

A. No, they was just laughing and carrying on, both of them.

Q. Okay. So they started back towards Springfield, on [U.S. Route] 40, is it?

A. Yes.

Q. Where were you let off?

A. I wasn't let out.

Q. Where did you get out?

A. Somewhere along 40. It was closer over, pretty sure it was past the Madison County, "Entering Madison County" sign because I had a distance to run.

Q. You wanted out?

A. Yes.

Q. And you asked to get out?

A. Yes.

Q. And eventually, what, the car slowed down sufficiently for you to get out?

A. Yes.

Q. No one tried to rape you, did they?

A. They had their hands on me laughing, yelling vulgar things at me.

Q. Who had their hands on you?

A. The boy in back. I don't know who he was.

Q. He grabbed you by the shoulders, didn't he?

A. Correct. No, he didn't grab me, not until I told him I'd slam his car in park unless he stopped. He proceeded to grab me and said, "Shut up, bitch, or I'll slam your head into the windshield."

Some time later, which might have been the next day, or several days later (the testimony was in conflict), in the presence of a number of people, Rinehart accused Shaw of having attempted to rape her during the automobile ride referred to above. Rinehart admitted at trial that there was no truth to this accusation.

There was also testimony that Rinehart accused Shaw of having threatened to hit her with "numchucks." One of the witnesses defined numchucks as being "like two sticks about this long and they got like a little chain in between them and they swivel, like you swing them around."

There was testimony that at some later time the men to whom Rinehart made these accusations began a fight with Shaw, that Shaw was backing away during the fight, and that Shaw's eyes were swollen shut and he had numerous bruises after the fight. The testimony, from numerous witnesses, concerning the severity of the fight, and who did what to whom, was in substantial conflict. A short while after this incident, Shaw struck Rinehart with his automobile. Rinehart who was five-months pregnant, sustained fractures to both legs, and a rupture of her bladder. Her fetus was killed as a result of the collision.

Shaw testified that his eyes were swollen shut, he was scared and in pain, and that while trying to flee, he accidently hit Rinehart. Shaw was charged with Felonious Assault, and tried to a jury. His first jury trial ended in a hung jury.

Shaw's second trial ended in a verdict of guilty. A judgment of conviction was entered on the charge of Felonious Assault, and Shaw was sentenced to imprisonment for not less than seven years nor more than fifteen years. From his conviction and sentence, Shaw appeals.

II

Shaw's First Assignment of Error is as follows:

THE CONVICTION IN THE PRESENT CASE ESTABLISHED THAT JOHN SHAW COMMITTED THE OFFENSE WHILE UNDER THE INFLUENCE OF SUDDEN PASSION OR IN A SUDDEN FIT OF RAGE. THE CONVICTION FOR FELONIOUS ASSAULT SHOULD THEREBY BE REDUCED TO AGGRAVATED ASSAULT.

Although Shaw did not request, and the jury was not given, an instruction concerning Aggravated Assault, Shaw contends that the evidence in this case clearly established the mitigating circumstances sufficient to reduce his offense to Aggravated Assault, so that his conviction for Felonious Assault was against the manifest weight of the evidence. That mitigating circumstance is as follows:

No person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force shall * * *

R.C. 2903.12 (A).

In order to find the mitigating circumstance, the jury must determine that the defendant, at the time of the assault, was under the influence of sudden passion or in a sudden fit of rage, that the sudden passion or sudden fit of rage was brought on by serious provocation occasioned by the victim, and that that provocation was reasonably sufficient to incite the defendant into using deadly force.

In the case before us, the evidence in the record, at most, would have *permitted,* but not required, the jury to have found the existence of the mitigating circumstance. The evidence was in conflict concerning both the severity of the fight in which Shaw was engaged, and its underlying cause or causes. We cannot say that the evidence was so clear that a reasonable jury could only have found that the fight in which Shaw was involved was of such magnitude that it was reasonably sufficient to have incited Shaw into using deadly force; nor can we conclude that a reasonable jury would have been required, based upon the evidence in this record, to have found that that fight and Rinehart's false accusation of rape were sufficiently causally related to satisfy the requirement that the provocation be "occasioned by the victim."

Shaw's First Assignment of Error is overruled.

### III

Shaw's Second Assignment of Error is as follows:

THE TRIAL COURT ERRED WHEN IT FAILED TO CHARGE THE JURY AS TO THE INFERIOR OFFENSE OF AGGRAVATED ASSAULT.

In the first trial of this cause, which resulted in a hung jury, an instruction concerning Aggravated Assault was given. In the second trial, however, Shaw neither requested such an instruction, nor did he object to the trial court's failure to give such an instruction. As the State notes in its brief, it may well have been Shaw's strategy to exclude the intermediate possibility of an Aggravated Assault conviction in the hope that he would be acquitted of Felonious Assault.

*In State v. Clayton* (1980), 62 Ohio St. 2d 45, a failure to include a lesser included offense was held not to have constituted plain error where the defendant specifically requested that the instruction on the lesser-included offense

not be given. In the case before us, although Shaw neither requested that an Aggravated Assault instruction be given, nor objected to the trial court's failure to give it, there is nothing in the record reflecting that Shaw affirmatively requested that an Aggravated Assault instruction not be given.

Even when the claimed error is the failure to give an instruction concerning a lesser-included offense, that error is governed by the plain error standard if there is no request that the instruction be given, and no objection to the trial court's failure to give that instruction. *State v. Underwood* (1983), 3 Ohio St. 3d 12.

In the case before us, we cannot say that the outcome of the trial would clearly have been otherwise had the jury been given an instruction concerning Aggravated Assault. Consequently, we may not reverse.

Shaw's Second Assignment of Error is overruled.

### IV

Shaw's Third Assignment of Error is as follows:

THE TRIAL COURT ERRED WHEN IT INSTRUCTED THE JURY THAT IT COULD NOT CONSIDER A LESSER INCLUDED OFFENSE UNTIL AFTER THE JURY HAD FOUND THE DEFENDANT NOT GUILTY OF THE GREATER OFFENSE.

Shaw cites *State v. Thomas* (1988), 40 Ohio St. 3d 213, in support of this Assignment of Error. In that case, the Supreme Court set forth the test for determining the propriety of this kind of a jury instruction, as follows:

A jury must unanimously agree that the defendant is guilty of a particular criminal offense before returning a verdict of guilty on that offense. If a jury is unable to agree unanimously that a defendant is guilty of a particular offense, it may proceed to consider a lesser included offense upon which evidence has been presented.

The jury is not required to determine unanimously that the defendant is not guilty of the crime charged before it may consider a lesser included offense.

*State v. Thomas, supra* 3rd para. of syllabus.

In *State v. Thomas,* the Supreme Court found that the instruction given in that case did not clearly violate the above-quoted test. The instruction in that case was as follows:

If you find that The State has proven beyond a reasonable doubt all of the essential elements of the crime of aggravated murder, then your verdict must be that the Defendant is guilty of aggravated murder; and you will not consider the lesser offense.

However, if you find that The State has failed to prove beyond a reasonable doubt the element of prior calculation and design, then your verdict must be that your verdict must be that the Defendant is not guilty of aggravated murder.

You will then proceed with your deliberations and decide whether the state has proved beyond a reasonable doubt all of the essential elements of the lesser crime of murder.

The Supreme Court found that the above-quoted instruction did not expressly require unanimous acquittal with respect to the charged crime as a pre-condition of the jury's consideration of the lesser-included offense.

In the case before us, the jury was instructed that it was not to deliberate its verdict with respect to the lesser-included offense of Assault unless and until it had found Shaw not guilty of Felonious Assault. In the only portion of the jury instructions in which the relationship between the principal charge and the lesser included offense is discussed, the instructions are as follows:

After you have deliberated on this case and reached a verdict, you will fill in the word "guilty" or the words "not guilty" so that it reads: We, the jury, find the defendant, John R. Shaw, guilty of felonious assault, or: We, the jury, find the defendant, John R. Shaw not guilty of felonious assault. Now, only if you find the defendant not guilty of felonious assault, will you then go onto the second form of the verdict, second part of the form, and there it states: We, the jury, find the defendant, John R. Shaw, blank of assault. And if, after you deliberate and reach a verdict on that, you will fill in the word "guilty" or the words

"not guilty" so that it reads: We, the jury, find the defendant John R. Shaw guilty of assault or: We, the jury, find the defendant John R. Shaw not guilty of assault.

We conclude that the above-quoted portion of the jury instructions in this case, unlike the jury instructions in *State v. Thomas,* clearly indicated to the jury that it should not consider Shaw's guilt or innocence of the lesser included offense of Assault until after it had arrived at a verdict, which had to be unanimous, of not guilty of Felonious Assault. This violates the test set forth in *State v. Thomas, supra.*

Shaw objected to the giving of this instruction. He argued, correctly, that the jury should have been permitted to consider the lesser-included offense even in the event that it had not been able to reach a unanimous verdict with respect to the principal offense.

Upon the authority of *State v. Thomas, supra,* Shaw's Third Assignment of Error is sustained.

**V**

Shaw's Fourth Assignment of Error is as follows:

THE PROSECUTOR ERRED WHEN HE CROSS-EXAMINED JOHN SHAW CONCERNING HIS REFUSAL TO MAKE A STATEMENT TO THE CLARK COUNTY SHERIFF'S DEPARTMENT UNTIL THIRTY-TWO HOURS AFTER JOHN SHAW'S ARREST. THIS ERROR DENIED APPELLANT HIS RIGHTS AS GUARANTEED BY THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION; AND SECTIONS 10 AND 16 ARTICLE 1 OF THE OHIO CONSTITUTION.

We agree with Shaw that the State should not have been permitted to cross-examine him concerning his refusal to make a statement to the Clark County Sheriff's office until after he had been in custody for thirty-two hours. *Doyle v. Ohio* (1976), 426 U.S. 610. However, as the State points out, there was no objection to this line of cross-examination, and no request for a curative instruction or for a mistrial. Therefore, this Assignment of Error is governed by the plain error standard.

This was not a one-on-one situation where the only evidence in the case was the testimony of the defendant and the complaining witness.

A number of witnesses testified concerning the events, and some of that testimony corroborated Shaw's version of events, at least to some extent. We cannot conclude that Shaw's credibility was so crucial to the outcome of this trial that the bringing to the jury's attention that Shaw had elected, for thirty-two hours, at least, to stand upon his Fifth Amendment privilege against self-incrimination so infected the trial that the result would otherwise clearly have been different.

In this connection, also, it is significant that Shaw does not deny having struck Rinehart with his automobile. It would have been obvious to a person in Shaw's position that he was exposed to the substantial possibility of criminal charges being brought against him; there was relatively little likelihood that he could avoid criminal charges being brought against him by talking to the Sheriff's deputies and either clearing up a misunderstanding or establishing an alibi or some other incontrovertible proof of innocence. Therefore, and this would have been obvious to the jury, he had relatively little to gain and potentially much to lose, by making a statement to the police.

Consequently, his reluctance to talk to the police was not likely to have been given much weight by the jury as evidence of Shaw's guilt.

We cannot conclude, based upon this record, that the result of the trial clearly would have been otherwise had Shaw not been cross-examined concerning his refusal to make a statement to the Sheriff's deputies for thirty-two hours following his arrest.

Shaw's Fourth Assignment of Error is overruled.

## VI

Shaw's Fifth Assignment of Error is as follows:

THE TRIAL COURT ERRED WHEN IT EXCLUDED THE TESTIMONY OF BRETT BRICKLES WHO WAS PERMITTED TO TESTIFY IN THE FIRST TRIAL.

Shaw contends that he should have been permitted to show, through the testimony of Brett Brickles, the other passenger in the car he was driving, that Shaw did not rape or otherwise molest Rinehart during the automobile ride in which she was a passenger.

Rinehart had already testified that it was Brett Brickles, not Shaw, who put his hands upon her in an offensive manner. She also admitted having made a false accusation of rape against Shaw. Since, Rinehart, who was the putative victim of the rape, the maker of the rape accusation, and the victim of the offense charged in this case, admitted that there was no basis for the rape accusation, and that it was Brickles, rather than Shaw, who had grabbed her in the car, and since the State did not contest these facts, they were clearly established.

A trial court has discretion to exclude evidence, even if relevant, if its probative value is substantially outweighed by the fact that it is a "needless presentation of cumulative evidence." Evid. R. 403(B).

We conclude that the trial court was within its discretion in finding that the preferred testimony of Brickles was cumulative and needless in view of Rinehart's admission that there was no basis for her accusations against Shaw. Furthermore, even if the trial court had erred in excluding this evidence, that error was harmless since the facts sought to be proved by this evidence had already been clearly established by Rinehart's testimony.

Shaw's Fifth Assignment of Error is overruled.

## VII

Shaw's Sixth Assignment of Error is as follows:

IT IS AN ABUSE OF THE TRIAL COURT'S DISCRETION TO IMPOSE A SENTENCE OF SEVEN (7) TO FIFTEEN (15) YEARS UPON A FIRST TIME OFFENDER WHO HAD BEEN SEVERELY BEATEN JUST PRIOR TO THE COMMISSION OF THE OFFENSE AS A RESULT OF THE FALSE ACCUSATION BY THE VICTIM.

In the absence of any indication in the record that the trial court, in determining a proper sentence, has failed to consider the mitigating factors set forth in R.C. 2929.12, a trial court will be presumed to have properly considered those mitigating factors, and will ordinarily be presumed to have acted within its discretion, when its sentence is within the range prescribed by statute. *State v. Crouse* (1987), 39 Ohio App. 3d 18.

In the case before us, as in *Crouse,* the trial court could have imposed a sentence of actual incarceration, but did not. Furthermore, in this case unlike in *Crouse,* the trial court did not impose the maximum minimum term of 8 years, but instead imposed a minimum term of 7 years.

There were many potential facts for the trial court to consider exercising its sentencing discretion, both in mitigation and in aggravation. While there was some evidence from which the trial court might have found some provocation for the offense, that evidence was by no means clear and uncontroverted. Furthermore, as the trial court noted in imposing sentence, Shaw drove his car towards a group of several people, might have killed one or more of them, inflicted serious injuries on Rinehart, and did, in fact, kill her unborn child.

Based upon the record in this case, we cannot conclude that the trial court abused its discretion in imposing a sentence of 7 to 15 years' incarceration.

Shaw's Sixth Assignment of Error is overruled.

### VII

Shaw's Third Assignment of Error having been sustained, the judgment of the trial court will be Reversed, and this cause will be Remanded for a new trial .

WOLFF, P.J, concurs.

KERN, J., concurs in judgment only.

(Judge Joseph D. Kerns, Retired from the Court of Appeals, Second Appellate District, Sitting by Assignment of the Chief Justice of the Supreme Court of Ohio.)