OPINION
Defendant-appellant Robert Dillard appeals from his conviction and sentence for Burglary, following a jury trial. Dillard contends that the trial court erred by admitting a statement he made to an investigating police officer, while in custody; that the trial court erred in allowing testimony concerning his earlier choice, upon being apprehended, to remain silent; that the trial court erred in denying his motion for a judgment of acquittal; that his conviction is not supported by the evidence, and is against the manifest weight of the evidence; and that the trial court erred by instructing the jury that it was first to consider the principal charge of Burglary.
We conclude that the record supports the conclusion that Dillard's statement to the investigating police officer, while in custody, was voluntarily made following Miranda warnings, and that, in any event, there was no motion to suppress that statement, nor was any objection made to its admission into evidence. To the contrary, Dillard, who did not testify at trial, relied upon his statement in closing argument. Although the arresting police officer did testify concerning Dillard's initial choice to remain silent, no objection was made to this testimony, and we conclude that this reference did not rise to the level of plain error. We further conclude that the evidence in the record is sufficient to support Dillard's conviction for Burglary, and that his conviction is not against the manifest weight of the evidence.
Finally, we conclude that the jury instructions were not improper because the trial judge instructed the jury that if it was unable to agree upon a verdict on the Burglary charge, it was to consider lesser-included offenses.
Because we find no merit to Dillard's assignments of error, the judgment of the trial court is Affirmed.
 I
Dillard and another, Reginald Allen, were apprehended by Dayton Police Officers in the residence of Wilson Smith. Smith, a 78-year old man, had been suffering from gout, and had gone to stay with his daughter some ten months before Dillard's apprehension. There was testimony that Smith's residence, a duplex, was locked, and that at least one broken window had been boarded up with plywood. The police officers who apprehended Dillard found the house locked, and had to make their initial entry by lifting a piece of plywood and entering through a window.
Smith's daughter, Carolyn Marvin, who made frequent trips to the house, testified that on the day Dillard was apprehended, based on the condition of the rooms, "I would say somebody lived there." Smith testified that he intended to return to his home "soon," after his gout responded to medical treatment.
Dillard was arrested and charged with Breaking and Entering. Subsequently, he was indicted for Burglary. At the time of his arrest, he was advised of his rights under Miranda v. Arizona
(1965), 384 U.S. 436, and declined to make a statement. The next day, Dillard was interviewed by Dayton Police Detective Elizabeth Martinez, while in custody. Martina again advised him of hisMiranda rights. Dillard signed the form, and agreed to talk to Martinez about the case. At trial, Dillard did not testify. Martinez testified, without objection, concerning Dillard's statement, as follows:
 He told me that he was visiting a friend on Yuma, Mr. Allen, when Mr. Allen was telling him that he needed some property for his apartment. Mr. Dillard told Mr. Allen that he knew of some vacant homes in the area that they could go to, so he asked him to come along with him for a walk and they ended up at 416 North Williams.
 Mr. Dillard told me that he found the front door slightly ajar and they walked in. They started looking around the residence, and eventually they went upstairs where they were for about 15 to 20 minutes. They then heard somebody yelling "Police!"
 Mr. Allen came downstairs first; then he came down where he was subsequently arrested.
 Did he tell you in his statement what type of items Mr. Allen was allegedly looking for for his apartment?
A. Lamps and carpeting.
At the conclusion of the State's case-in-chief, Dillard moved for a judgment of acquittal pursuant to Crim. R. 29. His motion was overruled. Dillard then rested, without offering any evidence.
During argument, Dillard's counsel relied upon Dillard's statement to Detective Martinez:
 What do you know about the case? You know that in this particular case, Mr. Dillard talked to Detective Martinez. First thing he says to her in that interview was that the door was open. It's the first thing he says. He didn't say "I went through the wood, I went through the window," but, "The door was open."
 He was honest with us about everything. Why is he going to lie about that? He doesn't know the elements of crimes. He doesn't know that you have to have force to commit a burglary. He was being honest with her. He went inside the open door.
* * *
 "With purpose of commit in the structure or separately secured or separately occupied portion of the structure a theft offense" that he knowingly intended to exert control over the property of another, that's what that offense is. What did he say to Detective Martinez? The first thing he says to her, "It's been vacant for five six seven months. It's a vacant house."
In the course of instructing the jury, the trial judge gave them the elements of Burglary, the elements of Breaking and Entering, and the elements of Criminal Trespass. The trial judge compared and contrasted these offenses. The trial judge then gave the jury the following instructions:
 If the evidence warrants it, you may find the defendant guilty of an offense lesser than that charged in the indictment; however, notwithstanding this right, it is your duty to accept the law as given to you by the Court, and if the facts and the law warrant a conviction of the offense charged in the indictment, namely Burglary, then it is your duty to make such a finding uninfluenced by your power to find a lesser offense.
 This provision is not designed to relieve you from the performance of an unpleasant duty. It is included to prevent failure of justice if the evidence fails to prove the original charge, but does justify a verdict for a lesser offense.
 Let me summarize. You must first consider the indicted charge of Burglary. If you find the defendant guilty, you should sign the verdict form and buzz for the bailiff. If you find the defendant not guilty of Burglary, or are unable to reach a verdict on that charge, you should then consider the lesser included charge of Breaking and Entering, which involves an unoccupied as opposed to an occupied dwelling. If you find the defendant guilty, you should sign the verdict II and buzz for the bailiff. If you find the bailiff not guilty or are unable to reach a verdict on the charge of Breaking and Entering, you should consider the lesser charge of Trespass, which does not include the purpose of obtain property of another, and then sign Verdict III and buzz for the bailiff.
(Emphasis added.)
Following the instructions to the jury, the trial court called both counsel to sidebar, and asked each of them if there were any objections or corrections. Dillard's trial counsel responded in the negative.
The jury found Dillard guilty of Burglary, a judgment of conviction was entered, and Dillard was sentenced accordingly. From his conviction and sentence, Dillard appeals.
 II
Dillard's First Assignment of Error is as follows:
 THE DEFENDANT'S CONSTITUTIONAL RIGHTS TO DUE PROCESS AND A FAIR TRIAL WERE ABROGATED BY HOLDING HIM IN CUSTODY FOR TWENTY (20) HOURS, THEN QUESTIONING HIM ABOUT THE CRIME AND USING THE ADMISSIONS AGAINST HIM AT TRIAL.
Dillard relies upon State v. Barker (1978), 53 Ohio St.2d 135, and Miller v. Fenton (1985), 474 U.S. 104, 88 L.Ed.2d ___, 106 S.Ct. 445, for the proposition that the length of time that he was in police custody without being formally booked, twenty hours, amounted to such mistreatment and such deprivation of his rights as to totally deprive him of any semblance of due process. We understand Dillard to be arguing, in essence, that his statement was involuntary.
We fail to see that either of the cases cited support Dillard's argument. In State v. Barker, supra, the Ohio Supreme Court found a statement voluntary that had been obtained as the result of an interrogation lasting more than seven hours. InMiller v. Fenton, the United States Supreme Court was concerned solely with the issue whether a finding by a state court that a confession is voluntary is subject to independent federal determination in a habeas corpus proceeding.
Dillard also relies on State v. Johnston (1990), 64 Ohio App.3d 238. In that case, a confession obtained as a result of an interrogation lasting from 3:30 p.m. to midnight, approximately eight and one-half hours, was found to have been involuntary. The court of appeals specifically found that: "The conduct of the police during the eight and one-half hour session indicates a process of interrogation and an attempt to overbear defendant's free will through coercive behavior. The state presented no legitimate reason for the length of the interrogation in this instance." Id, at 245.
We find nothing comparable in the case before us. There is no indication in the record that Dillard was mistreated in any way during the time that he was in custody preceding his interrogation by Detective Martinez. More importantly, there is nothing in the record to suggest that his interrogation by Martinez was prolonged.
We find nothing in this record to suggest that Dillard's statement to Martinez, after having been advised of his Miranda
rights, having signed the form acknowledging those rights, and having agreed to talk to her, was other than completely voluntary. In short, we find no error in the admission of Martinez's testimony concerning Dillard's statements to her.
Furthermore, we note that Dillard neither moved to suppress his statement to Martinez nor objected to the admission of this statement in evidence. To the contrary, Dillard relied upon arguably exculpatory aspects of his statement in his closing argument.
Dillard's First Assignment of Error is overruled.
 III
Dillard's Second Assignment of Error is as follows:
 THE TRIAL COURT ERRED IN ALLOWING TESTIMONY ABOUT THE DEFENDANT EXERCISING HIS RIGHT TO REMAIN SILENT THEREBY INFERRING GUILT.
The police officer who apprehended Dillard, Justin Hayes, testified that he advised Dillard of his Miranda rights. Hayes's testimony continued as follows:
 And when you got down to the last part, did he decide to make a statement to you?
 A. No. We asked him typical questions, "What are you guys doing in here?" You know, "Do you have any valid reason why you're in this residence?" And he didn't give us any reply.
Okay. He remained totally silent.
A. That's correct.
Dillard contends that the admission of this testimony was in derogation of his privilege against self-incrimination under theFifth Amendment to the United States Constitution.
Dillard made no objection to this testimony at trial; therefore, this assignment of error is governed by the plain error standard of review set forth in Crim. R. 52(B). Plain error is not to be found lightly, but is only to be found if the outcome of the trial would clearly have been different if the error had not occurred. State v. Wickline (1990), 50 Ohio St.3d 114, certiorari denied (1990), 498 U.S. 908, 111 S.Ct. 281; State v.Cooperrider (1983), 4 Ohio St.3d 226.
In the case before us, we cannot find that the reference to Dillard's election to remain silent constituted plain error. The jury was made aware that one day later Dillard elected to, and did, make a voluntary statement to the police. Therefore, we find it unlikely, in the extreme, that the jury made any inference of guilt based on the fact that Dillard elected, initially, to remain silent.
Dillard's Second Assignment of Error is overruled.
 IV
Dillard's Third and Fourth Assignments of Error are as follows:
 THE TRIAL COURT ERRED IN NOT GRANTING THE RULE 29 MOTION.
 THERE WAS INSUFFICIENT EVIDENCE TO SUSTAIN THE CONVICTION AND THE EVIDENCE WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
Dillard's motion for a judgment of acquittal was made at the conclusion of the State's evidence. Dillard offered no evidence. Accordingly, the issue of the sufficiency of the evidence to sustain a conviction for Burglary also controls Dillard's Third Assignment of Error, in which he argues that the trial court erred by overruling his motion for judgment of acquittal.
Dillard argues that the evidence against him is deficient in three respects. First, he argues that there is no proof that he entered Wilson's home by force, stealth or deception. Second, he argues that there is no proof that he entered Wilson's home with the purpose to commit a theft offense or that he aided or abetted another toward that end. Third, he argues that there is no proof that Wilson's home was an occupied structure at the time of the break-in.
With respect to the issue of force, the State relies upon evidence that the police found the door locked, and the plywood on the window pulled away from the frame and slightly bent outward, and that Smith's daughter, Marvin, testified that she regularly checked the house, moving the plywood on the windows to make sure it was secure, and jiggling the door knob on the front door to make sure it was locked, and that she did so the day before Dillard was apprehended inside the residence.
We conclude that this evidence is sufficient to prove that force was used to gain entry into the house.
The State also argues that there was proof that Dillard gained entry to the house by stealth, but we find it unnecessary to address this argument.
With respect to the purpose to commit a theft offense, the State relies upon Dillard's admission, to Martinez, that he understood that Allen's purpose was to obtain lamps and carpeting for his apartment, and that Dillard, in response, directed Allen to this home as a potential source. We agree with the State that this evidence is sufficient to prove a purpose to aid and abet Allen in the commission of a theft offense.
On the issue of the occupied structure, R.C. 2909.01(C) defines "occupied structure," in pertinent part, as follows:
 "Occupied Structure" means any house, building, outbuilding, water craft, aircraft, railroad car, truck, trailer, tent, or other structure, vehicle or shelter, or any portion thereof, to which any of the following applies:
 It is maintained as a permanent or temporary dwelling, even though it is temporarily unoccupied and whether or not a person is actually present.
The State relies upon testimony that Wilson was only temporarily absent from his home, intending to return as soon as his gout had cleared up. The State also relies upon the fact that the home was being maintained as a dwelling with electric, water, gas and telephone service. Finally, although there was conflicting testimony concerning the state of the residence at the time of the break-in, Marvin, Wilson's daughter, did testify that she would have concluded, based upon the way it looked at that time, that somebody lived there. We conclude that this evidence is sufficient to support a finding that the residence was an occupied structure at the time of the break-in.
Dillard also argues that his conviction is against the manifest weight of the evidence; that is, that the trier of fact clearly lost its way and created a manifest miscarriage of justice, so that the conviction must be reversed, relying uponState v. Martin (1983), 20 Ohio App.3d 172. As noted in that case, in which a judgment of conviction was affirmed, "The discretionary power to grant a new trial [upon the ground that the judgment is against the manifest weight of the evidence] should be exercised only in the exceptional case in which the evidence weighs heavily against conviction." Id., at 175.
In support of his argument that his conviction is against the manifest weight of the evidence, Dillard appears to rely, at least in part, upon the fact that he was initially charged merely with Breaking and Entering. However, as Detective Martinez testified, efforts to talk to Wilson Smith, the owner of the premises, were not immediately successful. Without talking to him, it was impossible to determine whether the house was an occupied structure at the time of the break-in.
Finally, Dillard relies upon State v. Thigpen (Dec. 10, 1998), Cuyahoga App. No. 73382, unreported, in which a Burglary conviction was reversed as being against the manifest weight of the evidence. In that case, however, the problem was with the element of having a purpose to commit a criminal offense. The court acknowledged that an otherwise unexplained forcible entry into a dwelling raises the reasonable inference that the entry is with the intent to commit a theft offense, citing State v. Flowers
(1984), 16 Ohio App.3d 313. The court found, however, that "the particular circumstances of this case support the contention that appellant's purpose and intent at the moment of entering the house was quite simply to bring his son * * * home with him." Thigpen,supra, at 12-13. In the case before us, there is no comparable innocent explanation for Dillard's forcible entry into Wilson Smith's residence.
We are not persuaded that Dillard's conviction is against the manifest weight of the evidence.
Dillard's Third and Fourth Assignments of Error are overruled.
Dillard's Fifth Assignment of Error is as follows:
 THE TRIAL COURT ERRED IN INSTRUCTING THE JURY ON HOW TO PERFORM THEIR DELIBERATIONS.
Although conceding that there was no objection to the jury instructions, Dillard argues that the trial court erred by instructing the jury that it must first consider the indicted offense, Burglary, before considering lesser-included offenses. Dillard relies upon State v. Shaw (1990), 65 Ohio App.3d 821, for this proposition. We conclude that Dillard's reliance upon Statev. Shaw, supra, is misplaced. In Shaw, supra, we held that a trial court erred when it instructed the jury that it could not consider a lesser-included offense until after the jury had found the defendant not guilty of the greater offense. That is not the situation in the case before us. The jury was clearly instructed that it should consider lesser-included offenses in the event that it was unable to agree upon a verdict on the indicted offense, or in the event that it should return a not guilty verdict on the indicted offense. Thus, the jury was not required to determine unanimously that the defendant was not guilty of the crime charged before it could consider lesser-included offenses, and the jury instruction given fails neither the test of State v. Shaw, supra, nor the test set forth in State v. Thomas (1988), 40 Ohio St.3d 213, upon which Shaw relied.
Dillard's Fifth Assignment of Error is overruled.
 VI
All of Dillard's assignments of error having been overruled, the judgment of the trial court is Affirmed.
BROGAN and YOUNG, JJ., concur.