OPINION
Defendant-appellant Paul Edward Bunting appeals the August 9, 2000, Judgment Entry of the Stark County Court of Common Pleas. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE
On June 2, 2000, defendant-appellant Paul Edward Bunting [hereinafter appellant] was indicted by the Stark County Grand Jury on one count of rape, in violation of R.C. 2907.02, and six counts of sexual battery, in violation of R.C. 2907.03. The Indictment stated that the victim was less than 13 years of age and that appellant was "the natural parent, adoptive parent, stepparent, guardian, custodian, or a person in loco parentis" of the minor victim.[1]
Appellant was arraigned on June 9, 2000. At the arraignment, appellant entered a plea of not guilty to all charges.
On June 27, 2000, appellant filed a Motion to Suppress. Appellant sought to suppress any statements that defendant made to Detective Grizzard of the Massillon Police Department, arguing that the statements were obtained in violation of his Fifth Amendment right to remain silent and Sixth Amendment right to counsel.
A hearing was held on appellant's Motion to Suppress on July 18, 2000. Subsequently, on July 24, 2000, the trial court entered a Judgment Entry in which it sustained appellant's Motion to Suppress in part, but overruled the motion, in part.[2]
On August 4, 2000, appellant entered a plea of no contest to each of the counts presented in the Indictment. On August 9, 2000, the trial court entered a Judgment Entry which found appellant guilty and sentenced appellant. Appellant was ordered to serve a term of nine years of incarceration on the charge of rape, and a term of four years of incarceration on each of two of the sexual battery counts. The trial court sentenced appellant to a one year prison term on one count of sexual battery. The trial court ordered that those sentences be served consecutively. As to the remaining three counts of sexual battery, the trial court ordered that appellant serve a sentence of one year of incarceration on each count, to be served concurrently with the previous prison terms imposed. Therefore, appellant was sentenced to a total of 18 years of incarceration.[3] Transcript of Plea and Sentence at 15.
It is from the trial court's August 9, 2000, Judgment Entry that appellant prosecutes this appeal, raising the following assignments of error:
ASSIGNMENT OF ERROR I
 THE TRIAL COURT ERRED IN FAILING TO GRANT APPELLANT'S MOTION TO SUPPRESS FOR THE REASON THAT APPELLANT'S STATEMENT WAS NOT GIVEN FREELY AND VOLUNTARILY AND THUS OBTAINED IN VIOLATION OF APPELLANT'S STATE AND FEDERAL CONSTITUTIONAL RIGHTS.
 ASSIGNMENT OF ERROR II
 THE TRIAL COURT ERRED IN FAILING TO GRANT APPELLANT'S MOTION TO SUPPRESS IN VIOLATION OF APPELLANT'S STATE AND FEDERAL CONSTITUTIONAL RIGHTS AGAINST SELF-INCRIMINATION.
There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. See State v. Fanning (1982)1 Ohio St.3d 19; State v. Klein (1991), 73 Ohio App.3d 486; State v.Guysinger (1993) 86 Ohio App.3d 592. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. See State v. Williams (1993),86 Ohio App.3d 37. Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. State v. Curry (1994), 95 Ohio App.3d 93, 96; State v.Claytor (1993), 85 Ohio App.3d 623, 627; and State v. Guysinger (1993),86 Ohio App.3d 592. As the United States Supreme Court held in Ornelasv. U.S. (1996), 517 U.S. 690, ". . . as a general matter determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal." It is pursuant to this standard of review that we review appellant's assignment of error.
 I II
Appellant, in the first assignment of error, maintains that the trial court erred in overruling appellant's motion to suppress because appellant's statement was not given freely and voluntarily. Appellant contends that the confession was obtained by (1) playing upon appellant's emotions, by creating a link between information on the wellbeing of the victim and cooperation with the police (mental coercion); (2) inducement through promises of cigarettes and release from custody before additional charges would be brought; and (3) a continuous course of coercive conduct. In appellant's second assignment of error, appellant contends that appellant did not knowingly waive his right to counsel. Appellant contends that "it is unclear whether appellant chose to waive his right to counsel." Appellant's Merit Brief at 20. Appellant argues that appellant's written and verbal responses are inconsistent, appellant made multiple inquiries regarding his right to stop the interview and appellant attempted to determine from the officer's responses the best way to limit his own responses so as to not incriminate himself. Appellant concludes that appellant did not indicate a desire to waive counsel nor understand that it would have been counsel's role to help him in the interview process. This court finds these assignments of error are factually interwined and will consider them together.
The facts of the case sub judice are as follows:[4] On May 11, 2000, in an initial interview, appellant was questioned by Detective Grizzard, of the Massillon Police Department, about alleged sexual conduct with the victim. Appellant denied the allegations and invoked his right to counsel, in writing. However, the discussion continued for approximately ten more minutes. Eventually, appellant was released.
Officer Nevada Gump, who had observed the May 11, 2000, interview, checked appellant's record and found that he did not have driving privileges. Therefore, at the end of the interview, Officer Gump caused a "hot sheet" to be posted which described appellant, appellant's vehicle and the area in which appellant may be likely to be driving. On May 12, 2000, the day after the initial interview, appellant was stopped by the Massillon Police Department for driving under suspension and placed under arrest. After appellant was stopped, Officer Gump, came to the scene of the arrest and conducted an inventory search of appellant's vehicle.
On May 15, 2000, appellant appeared before the Massillon Municipal Court, without an attorney, and was ordered to serve a 30-day sentence. The Massillon Municipal Court ordered appellant to serve days in the Massillon City Jail and days in the Stark County Jail. At some point, appellant was returned from the Stark County Jail to the Massillon City Jail to complete the days in the Massillon City Jail.
On May 23, 2000, appellant coincidentally encountered Detective Grizzard. Detective Grizzard was in the jail to speak with someone else and passed by appellant's cell. Appellant stopped Detective Grizzard and asked how the victim was doing. Detective Grizzard told appellant that since he had invoked his right to counsel, he could not talk to appellant. Appellant responded by telling the Detective that he was making arrangements to be represented by the Public Defenders Office but did not have an attorney yet. Appellant then stated that if Detective Grizzard got him a cigarette, appellant would talk to Detective Grizzard.
Detective Grizzard allowed appellant to smoke a cigarette in an interview room. The Detective then gave appellant another cigarette. Appellant then requested to talk to the Detective in the presence of the victim and her mother.
Detective Grizzard attempted to obtain the attendance of the victim and her mother but was unsuccessful because the victim had a seizure. Thereafter, on May 24, 2000, Detective Grizzard informed appellant that the victim had had a seizure the night before and could not be present for the interview. Appellant responded by crying and asking if the baby was okay. Appellant then agreed to talk to Detective Grizzard if he could have a cigarette. Detective Grizzard arranged for appellant to have a cigarette and asked Officer Gump to stay with appellant while he smoked a cigarette in the alley of the jail. While they were in the alley, Officer Gump explained to appellant that he (appellant) had to be the one to initiate any conversation if appellant wanted to speak with the officers. Thereafter, upon entering the interview room, appellant spoke first and asked the Detective what charges he could be facing.
In the initial stages of the interview, appellant agreed to talk to the Detective even though the victim and her mother were not present. Further, Detective Grizzard and appellant had a lengthy discussion regarding appellant's rights. Ultimately, appellant signed a written waiver of his constitutional rights and verbally indicated that he was willing to talk. Appellant made it clear that he understood that he could stop the conversation at any point. Detective Grizzard asked appellant if he preferred to just talk or would prefer for the Detective to ask the questions. Appellant indicated that he would prefer to have the Detective ask the questions. Thereupon, Detective Grizzard asked appellant questions, and appellant provided answers. At no time did appellant request that the conversation end.
Another interview occurred on May 26, 2000, in which appellant was presented with a pocket notebook, which had been provided to the police by appellant's daughter.[5] The notebook contained dates and annotations in code. Appellant explained the contents of the notebook to the police only after appellant waived his rights again.
Based upon the evidence presented at the suppression hearing, the trial court concluded that appellant invoked his right to counsel at the initial questioning on May 11, 2000. After that, all questioning should have ceased until appellant had counsel present. Therefore, the trial court suppressed statements made by appellant on May 11, 2000.[6]
However, the trial court found that, subsequently, while incarcerated in the Massillon City Jail, appellant approached Detective Grizzard and initiated further discussion with the police and agreed to talk to Detective Grizzard about the offenses. The trial court found that appellant's rights were explained to him and that the Defendant voluntarily, knowingly and intelligently waived those rights, including, but not limited to, his right to have counsel present. Therefore, the trial court denied the motion to suppress as it pertained to any statements made after May 11, 2000.
In Miranda v. Arizona (1966), 384 U.S. 436, the United States Supreme Court held that when a defendant requests an attorney, the police must stop interrogation until an attorney is present. "Interrogation" has been defined as including "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." Once a defendant invokes his right to counsel, police may talk to him only if the defendant himself initiates further communications. This rule embodies two distinct inquiries. First, courts must determine whether the accused actually invoked his right to counsel. Second, if the accused invoked his right to counsel, courts may admit his responses to further questioning only on the finding that he intelligently waived the right he had invoked. Edwards v.Arizona (1981), 451 U.S. 477, 484-485.
Whether an accused has reopened dialogue with the police and whether he has waived his previous request for counsel are two separate inquiries.Oregon v. Bradshaw (1983), 462 U.S. 1039, 1045. "Even if a conversation taking place after the accused has expressed his desire to deal with police through counsel, is initiated by the accused, where interrogation follows, the burden remains on the prosecution to show that the subsequent events indicated a waiver of the Fifth Amendment right to have counsel present during the interrogation." Id. at 1044. To waive Miranda rights the waiver must be "made with a full awareness of both the right being abandoned and the consequences of the decision to abandon it." Moran v. Burbane (1986), 475 U.S. 412.
Further, even if appellant has ultimately waived his right to counsel, any confession or admission must be voluntary. In order to be voluntary, a confession must be the product of a rational intellect and free will. In order to determine whether a confession was voluntarily given the court must consider the totality of the circumstances surrounding the confession's inducement. Mincey v. Arizona (1978),437 U.S. 385; State v. Barker (1978), 53 Ohio St.2d 135; State v. Edwards
(1976), 49 Ohio St.2d 31, vacated on other grounds, (1978),438 U.S. 911. The totality of the circumstances includes, but is not limited to, the age, mentality and prior criminal experience of the accused; the length, intensity and frequency of the interrogations; the existence of physical deprivation or mistreatment; and the existence of threat or inducement. State v. Edwards, supra.
We find, as did the trial court, that appellant's statements to Detective Grizzard initiated the discussion with the police. Therefore, we find that appellant's constitutional rights were not violated when appellant was questioned after he initially exercised his right to counsel.
As to whether appellant waived his right to counsel, we find that appellant was informed of his rights in detail, including his right to counsel, and signed a written waiver of them before speaking with police. Further, we find that the record reflects that appellant understood his rights, including his right to have counsel present, and clearly chose to waive his rights and speak with Detective Grizzard without counsel. We note that appellant had previously exercised that right on May 11, 2000 and then chose to reinitiate a conversation with police. Detective Grizzard fully advised appellant of his rights again. The record reflects that appellant was aware that he had a right to have counsel present and chose to waive that right, as evidenced by his written waiver and verbal acknowledgments.
We further find that, upon reviewing the totality of the circumstances, appellant's statements to the police were given freely and voluntary. At the time of questioning, appellant was a 48 year old man. Appellant was advised of his rights on three occasions, not deprived of food or drink, the interviews were of limited intensity, duration and frequency. Appellant approached the Detective, whom he called by his first name, and stated he wanted to talk to him, albeit in exchange for cigarettes. We note that the police did not initiate this conversation nor offer appellant cigarettes in exchange for the statements. It was appellant who made the offer to speak and who made the request for cigarettes.[7] It would appear that appellant was the initiator and bargainer, not the police. Further, even though appellant was given cigarettes, he was advised of his rights and given an opportunity to exercise those rights before any interrogation began and had the free will to exercise his rights as he saw fit. This is supported by appellant's previous written refusal to waive his rights. We find that the conditions under which appellant was questioned were not such as to be so intimidating as to overcome appellant's free will. It would appear that appellant chose to talk to police and was in control of his actions, and to some extent, the conditions and parameters of the interview.
Appellant's first and second assignments of error are overruled.
The judgment of the Stark County Court of Common Pleas is hereby affirmed.
 JUDGMENT ENTRY
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Stark County Court of Common Pleas is affirmed. Costs to appellant.
 _________________________________ By Edwards, P.J.
Hoffman, J. and Farmer, J. concurs.
[1] The Indictment contained two counts which further alleged that the victim's mother, Sherry Lynn King, aided and abetted appellant in committing the rape and sexual battery, to-wit: "did engage in sexual conduct" with the victim.
[2] The relevant facts will be presented in the analysis of the assignments of error.
[3] In a separate Judgment Entry, filed August 9, 2000, appellant was found to be a sexually oriented offender, pursuant to R. C. 2950.09.
[4] We note that the trial court made detailed findings of facts, in accordance with Crim. R. 12(E). Since we find that the record supports those findings, we are bound by them. State v. Bays (1999),87 Ohio St.3d 15. 
[5] Appellant's daughter claimed that she found the notebook among her father's belongings.
[6] The State has not appealed this finding.
[7] We understand appellant's argument that appellant's concern for the child victim was strong and that appellant was seeking information on her wellbeing. Further, we recognize that appellant was concerned that he have time to set his affairs in order before being held on charges stemming from the alleged sexual conduct with the minor victim. However, the police did not create appellant's concerns. Further, the transcript of the discussions between the police and appellant do not demonstrate that appellant agreed to talk in order to obtain information on the child's wellbeing or that any promises were made in exchange for appellant's admissions.