OPINION
{¶ 1} Defendant-appellant, Derrick Bird, appeals the decision of the Butler County Court of Common Pleas denying his motion to suppress the statement he made to police.
 {¶ 2} Appellant was indicted by a grand jury for aggravated murder and aggravated robbery and convicted by a three-judge panel of the charges in connection with the death of a man in Middletown in 2001.
 {¶ 3} Appellant and a friend, Brad Isbell, met the victim, Marion Gill Emmett, in a Middletown bar on the evening of May 17, 2001. Appellant, Isbell, and the victim reportedly left the bar at the same time in the early morning hours of May 18. The victim's body was discovered in a Middletown cemetery later that afternoon. The cause of death was blunt abdominal trauma.
 {¶ 4} Middletown police, after talking with numerous individuals in the course of their investigation, suspected appellant and Isbell were involved in the homicide. The police left messages with appellant's parents that they wanted to talk with appellant. Middletown police also obtained a warrant for appellant's arrest by making an application therefor with the Middletown clerk of courts.
 {¶ 5} Appellant eventually called the police, but refused their requests on two separate days to come to the station to talk. Later the second day, police received a call from appellant's father indicating that appellant and his parents were on their way to the police station.
 {¶ 6} Officers interviewed appellant in a locked interrogation room. Appellant was given his Miranda warnings, signed a waiver card and talked with police. Appellant gave a lengthy statement that was videotaped. After the statement, appellant was arrested, booked, and reportedly served with the warrant.[1]
 {¶ 7} Appellant filed a motion to suppress his statement. The trial court denied the motion. Appellant was convicted by a three-judge panel and sentenced to life in prison. Appellant appeals the trial court's denial of the motion to suppress, presenting one assignment of error with three issues for review.[2]
Appellant's assignment of error
 {¶ 8} The trial court erred in failing to suppress Bird's interrogation statement.
 {¶ 9} When considering a motion to suppress, the trial court assumes the role of the trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. State v. Mills (1992), 62 Ohio St.3d 357, 366. Accordingly, when reviewing a trial court's decision on a motion to suppress, an appellate court accepts the trial court's findings of fact if they are supported by competent, credible evidence. State v. McNamara (1997),124 Ohio App.3d 706, 710. However, an appellate court reviews de novo whether the trial court's conclusions of law, based on those findings of fact, are correct. Id.
 {¶ 10} Appellant argues in his first issue that the trial court should have suppressed his statement because he was kept in custody on the basis of an arrest warrant that was not examined for probable cause and was not accompanied by a factual affidavit.
 {¶ 11} The trial court did not evaluate the validity of the arrest warrant, finding that it was not necessary because the warrant was not used to obtain appellant's statement. We agree with the trial court's finding that appellant voluntarily came to the police station without the warrant and agreed to talk with police after receiving his Miranda
warnings.
 {¶ 12} Even though the police did eventually secure an arrest warrant before appellant voluntarily appeared at the station with his parents, there is no evidence that the police told appellant that they had an arrest warrant, told him that he was under arrest, or otherwise used the warrant to secure appellant's presence at the station.
 {¶ 13} Middletown police detectives testified at the suppression hearing that they had developed appellant as a suspect in the murder after they talked with approximately ten different witnesses who had given information about what had occurred. Appellant talked to Middletown police twice on the telephone, but refused their requests to come in and talk with them. At one point in those phone conversations, appellant indicated that he would attack a police officer to get himself shot if need be, but he would not go to jail "over this."
 {¶ 14} After appellant came to the station, he was placed alone in a locked room in the detective section of the police department while detectives talked briefly with appellant's parents outside. After appellant received Miranda warnings, he agreed to talk with police. The interview or interrogation was videotaped and viewed through a two-way mirror. The videotape was played at the suppression hearing.
 {¶ 15} Two police detectives were present in the room when appellant gave most of his statement. A detective began the interview after the Miranda warnings by asking appellant to tell them his story. Appellant gave incriminating statements early in his narration to police, admitting to hitting the victim five or six times and kicking him three times.
 {¶ 16} Appellant told police that he met the victim in a bar and won money from the victim in a pool game. Appellant stated that the victim followed appellant and Isbell out of the bar at the end of the evening. Appellant told police that he and Isbell walked through a cemetery and the victim followed them and threatened appellant. Appellant then stated that he hit and kicked the victim.
 {¶ 17} A few minutes into the interview, police told appellant that Isbell had told them a different version of events. Appellant asked and was told that Isbell had been arrested. Appellant asked if he was getting arrested, and the police detective responded, "Yeah, you are." Appellant asked, "Why? I want to know the reason why I'm being arrested." The police responded, "The facts we found out, interviews and things through our investigation."
 {¶ 18} Shortly thereafter, appellant told police that he would sit there and continue the interview, but he wanted to know "what it is I'm being charged with." The police told him that he was being charged with aggravated murder and aggravated robbery. Appellant responded by asking the detective, "How did robbery get in here?"
 {¶ 19} It is apparent from the videotape that appellant learned at this time that he was being arrested. Existence of an arrest is dependent not upon the fact that a suspect who voluntarily comes in for questioning concerning possible involvement in a murder is immediately given Miranda
warnings, nor upon the period of the questioning, but upon the existence of four requisite elements: (1) An intent to arrest, (2) under real or pretended authority, (3) accompanied by an actual or constructive seizure or detention of the person, and (4) which is so understood by the person arrested. See State v. Barker (1978), 53 Ohio St.2d 135, paragraph one of the syllabus.
 {¶ 20} It is clear from the record that at this point the arrest warrant had not been mentioned and appellant was not being held under authority of the arrest warrant. It is also clear from the record that the Middletown police had probable cause that appellant had committed a crime when they told him he was being arrested. Information need not unequivocally establish the accused's involvement, but must only show a probability or substantial chance that he engaged in criminal activity. See State v. Grant (July 14, 1989), Ashtabula App. No. 1362, citingIllinois v. Gates (1983), 462 U.S. 213, 103 S.Ct. 2317.
 {¶ 21} Probable cause for a warrantless arrest exists when the officer has sufficient information, derived from his own knowledge or a trustworthy source, to merit the prudent or reasonable belief that the accused has committed an offense. State v. Timson (1974),38 Ohio St.2d 122, 127.
 {¶ 22} We find that the trial court did not err in determining that appellant's appearance at the police station was voluntary, that he was not being illegally detained based on the arrest warrant, and that his statement was not the result of, nor tainted by, the arrest warrant. The first issue of appellant's assignment is overruled.
 {¶ 23} Appellant's second issue for review is whether the trial court erred in not suppressing appellant's statement because, as appellant argues, police did not honor his desire to remain silent.
 {¶ 24} A suspect must articulate his desire to remain silent or to cut off questioning sufficiently clearly so that a reasonable officer in the circumstances would understand the statement to be an invocation of the right to remain silent. State v. Murphy, 91 Ohio St.3d 516, 520,2001-Ohio-112. If the suspect says something that may or may not be an invocation of the right, police may continue to question him and need not try to clear up the ambiguity. State v. Murphy ("I'm ready to quit talking and I'm ready to go home, too," was not an unequivocal assertion of defendant's right to remain silent).
 {¶ 25} Later in the interrogation, appellant told the detectives to "go ahead, cuff me, take me in and have me booked. Because there's no sense me sitting here trying to say what happened with me * * * because as usual, when it comes to Derrick Bird, he's guilty."
 {¶ 26} At this point in the session, appellant stands up and tells police, "You take me in; get booked, man." One of the detectives stands up and appellant is told to sit down. One of the detectives tells appellant, "This is our interrogation room. When we're done with you, we'll take you back [to be booked]. So don't stand up like you're going to leave because you ain't going nowhere right now, okay."
 {¶ 27} Appellant asserts that when he stood up in the interview room and told police to book him, he was thereby invoking his desire to remain silent.
 {¶ 28} Additionally, appellant asserts that he expressed his intent to stop the interview later when appellant responded to the questions of a third detective who had entered the room. The third detective told appellant, "This is your chance to talk about it. You been talking about it [to others]." Appellant told police, "Everything's right there in the paper. I'm done talking about it."[3]
 {¶ 29} The trial court found that appellant never asked for counsel during the interview and his statements that he was "done talking" were not an unambiguous expression of a desire to stop the questioning or end the encounter with police.
 {¶ 30} We have reviewed the videotape of the interview and the interview transcript. We have viewed the context in which both incidents occurred. Both, arguably, could have indicated appellant's desire to end the questioning. However, neither expressed an unequivocal desire to end the questioning. Accord Murphy.
 {¶ 31} We find that the trial court did not err in its determination that appellant's actions and statements were not an unambiguous expression of his desire to remain silent.
 {¶ 32} Appellant also argues under this issue for review that if appellant's statement had been correctly suppressed, there was insufficient evidence to prove beyond a reasonable doubt that appellant committed the crimes or that he was the principal offender. In other words, appellant is asking us to determine the legal consequences of his alleged improperly admitted inculpatory statement. State v. Murphy,91 Ohio St.3d at 554 (Cook, J., concurring) (the admission of improperly obtained confession is subject to same harmless error standard as other trial errors).
 {¶ 33} We note that appellant had made incriminating comments about his actions on the night in question before either incident discussed above had occurred. Specifically, appellant had told police that he hit and kicked the victim while they were in the cemetery. Therefore, while the information appellant conveyed after he allegedly asked for the questioning to cease could be suppressed, it would not be necessary to suppress the entire statement.
 {¶ 34} However, if we were to rule that appellant's entire statement would be suppressed, we would have before us circumstantial evidence, including the fact that the victim was last seen alive in the company of appellant, some evidence of attempts by appellant and Isbell to use the victim's ATM card early that morning, and testimony from other witnesses.
 {¶ 35} One of these witnesses testified that appellant told her that he and Isbell had beat someone to death. Another witness testified that appellant told her that they had beaten the victim, taken the victim's ATM card, and had returned to the cemetery and beaten the victim again. There was also testimony that appellant had tossed a lighter to an individual and told her to use "the dead man's lighter."
 {¶ 36} We find that there was sufficient testimony without appellant's statement to find appellant guilty beyond a reasonable doubt as a principal offender of aggravated murder and aggravated robbery. SeeState v. Treesh, 90 Ohio St.3d 460, 485, 2001-Ohio-4. Appellant's second issue for review is not well-taken.
 {¶ 37} Under his third issue for review, appellant argues that the trial court erred in failing to suppress his statement because coercive conduct by the police rendered his statement involuntary.
 {¶ 38} When the admissibility of a confession is challenged, the state must prove, by a preponderance of the evidence, that the confession was voluntarily given. State v. Melchior (1978), 56 Ohio St.2d 15, 25. A confession is involuntary if it is the product of "coercive police activity." State v. Loza, 71 Ohio St.3d 61, 66, 1994-Ohio-409, quotingColorado v. Connelly (1986), 479 U.S. 157, 167, 107 S.Ct. 515.
 {¶ 39} In determining whether a confession is voluntary or involuntary, a court should consider the totality of the circumstances, including the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement. State v. Barker (1978), 53 Ohio St.2d 135, paragraph two of the syllabus.
 {¶ 40} Appellant uses the following facts or incidents from the interview to support his argument of police coercion. Specifically, appellant refers to the incidents discussed earlier wherein he was told to sit down and where he said he was "done talking," but the interview continued.
 {¶ 41} Appellant also cites to the windowless, locked interrogation room where the interview was conducted and argues that the detectives, two at first and two others later in the interview, were armed. Appellant argues that his will was overborne by the third detective who put his hand on appellant's shoulder and leaned toward his face, speaking in "sharp and pitched" tones.
 {¶ 42} Appellant further offers that at the age of 20, he was too young to be assertive to the officers, and that his "mental illness" * * * "clouded his rationality."
 {¶ 43} The trial court found no coercive police conduct, and no evidence that appellant was not capable of waiving his rights and of voluntarily giving his statement.
 {¶ 44} We have reviewed the videotape of the appellant's statement, including the incidents cited, and the statements, gestures, and demeanor of both appellant and the police. We are also aware of appellant's previous criminal conviction, and his mental health history. We find that there was no showing of police coercion or other factors involving appellant that affected the voluntariness of appellant's statement. Specifically, we agree that appellant's will did not appear be overborne by the police actions or affected by a mental illness. The trial court did not err in finding that appellant's statement was admissible.
 {¶ 45} Accordingly, appellant's third issue for review is not well-taken. Appellant's assignment of error is overruled.
Judgment affirmed.
YOUNG and POWELL, JJ., concur.
[1] While the detective testified that he served the warrant on appellant, there is no completed return in the record.
[2] Appellant indicated at oral argument that his three issues could be considered assignments of error, but we will refer to them as issues for review as indicated in appellant's brief.
[3] There is no record that a written statement was taken from appellant. The "paper" to which appellant may be referring is a list of witnesses who had told Middletown Police what appellant told them about the murder.