[Cite as *State v. Brantley*, 2017-Ohio-8810.]

IN THE COURT OF APPEALS

ELEVENTH APPELLATE DISTRICT

TRUMBULL COUNTY, OHIO


STATE OF OHIO,                          :        **O P I N I O N**

        Plaintiff-Appellee,           :

    - vs -                                  :        **CASE NO. 2017-T-0017**

RAHEEM AKEEM BRANTLEY,         :

        Defendant-Appellant.          :


Criminal Appeal from the Trumbull County Court of Common Pleas, Case No. 2016 CR 00755.

Judgment:  Affirmed.


*Dennis Watkins*, Trumbull County Prosecutor, and *LuWayne Annos* and *Michael A. Burnett*, Assistant Prosecutors, Administration Building, Fourth Floor, 160 High Street, N.W., Warren, OH  44481 (For Plaintiff-Appellee).

*Michael A. Partlow*, 112 South Water Street, Suite C, Kent, OH  44240 (For Defendant-Appellant).


COLLEEN MARY O'TOOLE, J.

{¶1}    Appellant, Raheem Akeem Brantley, appeals from the January 10 and 27, 2017 judgments of the Trumbull County Court of Common Pleas, finding him guilty of assault on a peace officer and resisting arrest and sentencing him to serve 18 months in prison following a jury trial.  On appeal, appellant raises sufficiency and manifest weight of the evidence arguments.  Finding no reversible error, we affirm.

{¶2} On November 21, 2016, the Trumbull County Grand Jury indicted appellant on two counts: count one, assault on a peace officer, a felony of the fourth degree, in violation of R.C. 2903.13(A) and (C)(5); and count two, resisting arrest, a misdemeanor of the first degree, in violation of R.C. 2921.33(B) and (D). Appellant was represented by counsel and entered a not guilty plea at his arraignment.

{¶3} A jury trial was held on January 9, 2017. Appellee, the state of Ohio, presented two witnesses to testify on its behalf: Patrolman Jay First and Chief Daniel Faustino with Brookfield Township Police Department ("BTPD").

{¶4} On October 18, 2016, Mr. D's Grocery Store in Brookfield Township, Trumbull County, Ohio, reported an incident to BTPD regarding counterfeit checks. BTPD informed the store to contact police if the individuals involved returned. The next day, BTPD received a call from Mr. D's regarding an individual attempting to cash another check.

{¶5} Chief Faustino and Patrolmen First and Mann went to Mr. D's. They approached the service desk upon their arrival. Two females were in the area. One was attempting to cash a check. The other was in the lobby. The officers spoke with the women. Both females had bad checks on them. The women were subsequently detained and placed in cruisers. The women advised the officers that they had been dropped off at Mr. D's in a silver car. The officers noticed a silver car that looked suspicious and out of the ordinary backed up against Subway on the east side of Mr. D's parking lot.

{¶6} The officers drove their cruisers and surrounded the silver vehicle which contained two occupants. Patrolman Mann remained with the female detainees.

2

Patrolman First approached the driver's side of the silver car. Chief Faustino approached the passenger's side. The driver of the vehicle was a female. Patrolman First recognized her as being a suspect in a counterfeit check cashing incident the evening before. Apparently, Mr. D's had taken a picture of the female suspect and Patrolman First had run her information. Patrolman First was also aware that the woman had an outstanding warrant for theft. Patrolman First requested the female driver to exit the vehicle. He observed a check inside her open purse that appeared to be the same type of check that was used the day before. The female driver was arrested and secured inside a cruiser.

{¶7} Seated in the passenger seat of the silver car was appellant. Patrolman First instructed appellant to exit the vehicle and speak with Chief Faustino. Appellant initially complied but he did not want to provide his last name, date of birth, or social security number. During the time the officers were trying to identify appellant, Chief Faustino told him he was not free to leave. Patrolman First observed appellant push Chief Faustino and run away on foot. The officers chased after appellant.

{¶8} Chief Faustino caught up with appellant after appellant had slipped and fallen to the ground. A struggle ensued. Chief Faustino attempted to detain appellant by grabbing appellant's left arm. Patrolman First saw appellant turn and strike Chief Faustino in the face causing injury. Chief Faustino's face was red, sore, and puffed up on the cheekbone. His injury was tender to the touch and lasted around five days.

{¶9} Following the punch, appellant fled again. Patrolman First pursued appellant on foot and subdued him with a taser. On cross-examination, Patrolman First said he was not sure if Chief Faustino was pushed or if appellant ran into him.

3

Patrolman First stated, however, that it was enough movement for him to notice it and that it got his attention. Patrolman First also indicated that none of the dash cameras on the three cruisers had been activated.

{¶10} Appellant was taken to Trumbull Memorial Hospital to have the taser bar removed. Appellant was later arrested and transported to the Trumbull County Jail.

{¶11} At the close of the state's case, defense counsel moved for an acquittal pursuant to Crim.R. 29, which was overruled by the trial court.

{¶12} Appellant testified on his own behalf. He admitted his criminal record and said he was guilty in those matters. He also was on federal parole for forgery. However, appellant denied any guilt in this case. Appellant denied ever pushing Chief Faustino. Appellant stated he merely waited for Chief Faustino to look away before he ran on foot. Appellant denied punching or intentionally striking Chief Faustino. Rather, appellant said any physical contact between the two was accidental and claimed that the officers were lying.

{¶13} Following trial, the jury returned guilty verdicts, finding appellant guilty of count one, assault on a peace officer, and count two, resisting arrest. The trial court rendered judgment on the verdict on January 10, 2017. On January 27, 2017, the court sentenced appellant to 18 months in prison on count one and six months on count two. The sentences were ordered to be served concurrently for a total term of 18 months. The court notified appellant that post-release control is optional up to a maximum of three years. Appellant filed a timely appeal and asserts the following two assignments of error:

{¶14} "[1.] Appellant's conviction for resisting arrest was not supported by sufficient evidence.

{¶15} "[2.] Appellant's convictions are against the manifest weight of the evidence."

{¶16} In his first assignment of error, appellant maintains there was insufficient evidence to support his conviction for resisting arrest. In his second assignment of error, appellant asserts his convictions for assault on a peace officer and resisting arrest are against the manifest weight of the evidence. For ease of discussion, we will address appellant's arguments together.[1]

{¶17} With regard to sufficiency, in *State v. Bridgeman*, 55 Ohio St.2d 261 (1978), the Supreme Court of Ohio established the test for determining whether a Crim.R. 29 motion for acquittal is properly denied. The Court stated that "[p]ursuant to Crim.R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." *Id.* at syllabus. "Thus, when an appellant makes a Crim.R. 29 motion, he or she is challenging the sufficiency of the evidence introduced by the state." *State v. Patrick*, 11th Dist. Trumbull Nos. 2003-T-0166 and 2003-T-0167, 2004-Ohio-6688, ¶18.

{¶18} As this court stated in *State v. Schlee*, 11th Dist. Lake No. 93-L-082, 1994 WL 738452, *4-5 (Dec. 23, 1994):

---

1. The state pointed out at oral argument that appellant only raised a sufficiency assignment regarding resisting arrest and a manifest weight assignment regarding both resisting arrest and assault on a peace officer. As addressed at oral argument, although one charge can be had without the other, resisting arrest and assault on a peace officer inherently overlap in this case.

5

{¶19} "'Sufficiency' challenges whether the prosecution has presented evidence on each element of the offense to allow the matter to go to the jury, while 'manifest weight' contests the believability of the evidence presented.

{¶20} "'"The test (for sufficiency of the evidence) is whether after viewing the probative evidence and the inference[s] drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all of the elements of the offense beyond a reasonable doubt. *The claim of insufficient evidence invokes an inquiry about due process. It raises a question of law, the resolution of which does not allow the court to weigh the evidence.*"'

{¶21} "In other words, the standard to be applied on a question concerning sufficiency is: when viewing the evidence 'in a light most favorable to the prosecution,' '(a) reviewing court (should) not reverse a [guilty] verdict where there is substantial evidence upon which the jury could reasonably conclude that all of the elements of an offense have been proven beyond a reasonable doubt.'" * * *

{¶22} "On the other hand, 'manifest weight' requires a review of the weight of the evidence presented, not whether the state has offered sufficient evidence on each element of the offense.

{¶23} "'In determining whether the verdict was against the manifest weight of the evidence, "(* * *) the court reviewing the entire record, *weighs the evidence* and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. (* * *)'" (Citations omitted.) * * *" (Emphasis sic.) (Citations omitted.)

{**¶24**} Regarding sufficiency, "a reviewing court must look to the evidence presented * * * to assess whether the state offered evidence on each statutory element of the offense, so that a rational trier of fact may infer that the offense was committed beyond a reasonable doubt." *State v. March*, 11th Dist. Lake No. 98-L-065, 1999 WL 535675, *3 (July 16, 1999). The evidence is to be viewed in a light most favorable to the prosecution when conducting this inquiry. *State v. Jenks*, 61 Ohio St.3d 259, paragraph two of the syllabus (1991), superseded by state constitutional amendment on other grounds as stated in *State v. Smith*, 80 Ohio St.3d 89 (1997). Further, the verdict will not be disturbed on appeal unless the reviewing court finds that reasonable minds could not have arrived at the conclusion reached by the trier of fact. *State v. Dennis*, 79 Ohio St.3d 421, 430 (1997).

{**¶25**} Regarding manifest weight, a judgment of a trial court should be reversed "'only in the exceptional case in which the evidence weighs heavily against the conviction.'" *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). The trier of fact is in the best position to assess the credibility of witnesses. *State v. DeHass*, 10 Ohio St.2d 230, paragraph one of the syllabus (1967).

{**¶26**} "[C]ircumstantial evidence and direct evidence inherently possess the same probative value." *State v. Fasline*, 11th Dist. Trumbull No. 2014-T-0004, 2015-Ohio-715, ¶39, citing *State v. Biros*, 78 Ohio St.3d 426, 447 (1997), citing *Jenks, supra*, paragraph one of the syllabus.

{**¶27**} "A finding that a judgment is not against the manifest weight of the evidence necessarily means the judgment is supported by sufficient evidence." *Patterson v. Godale*, 11th Dist. Lake Nos. 2014-L-034 and 2014-L-042, 2014-Ohio-

7

5615, ¶23, citing *State v. Arcaro*, 11th Dist. Ashtabula No. 2012-A-0028, 2013-Ohio-1842, ¶32 ("'Since there must be sufficient evidence to take a case to the jury, it follows that "a finding that a conviction is supported by the *weight* of the evidence necessarily must include a finding of sufficiency."'" (Emphasis sic.) (Citations omitted.))

{¶28} For the reasons addressed below, we determine the judgment is not against the manifest weight of the evidence and, thus, further conclude it is supported by sufficient evidence.

{¶29} Appellant takes issue with the guilty finding for resisting arrest, a misdemeanor of the first degree, in violation of R.C. 2921.33(B) and (D), which states in part:

{¶30} "(B) No person, recklessly or by force, shall resist or interfere with a lawful arrest of the person or another person and, during the course of or as a result of the resistance or interference, cause physical harm to a law enforcement officer.

{¶31} "* * *

{¶32} "(D) Whoever violates this section is guilty of resisting arrest.  * * * A violation of division (B) of this section is a misdemeanor of the first degree.  * * *"

{¶33} Appellant was also found guilty of assault on a peace officer, a felony of the fourth degree, in violation of R.C. 2903.13(A) and (C)(5), which states in part:

{¶34} "(A) No person shall knowingly cause or attempt to cause physical harm to another * * *.

{¶35} "* * *

{¶36} "(C)

{¶37} "* * *

8

**{¶38}** "(5) If the victim of the offense is a peace officer * * * while in the performance of their official duties, assault is a felony of the fourth degree."

**{¶39}** "When an individual reasonably believes he is not free to leave, he is 'in custody' for *Miranda* purposes." *State v. Tidwell*, 11th Dist. Lake No. 97-L-126, 1998 WL 682352, *3 (Sept. 25, 1998), citing *Miranda v. Arizona*, 384 U.S. 436, 467-468 (1966).

**{¶40}** "'The magic words, "you are under arrest" are not necessary to constitute an arrest.'" *Tidwell* at *3, quoting *State v. Maurer*, 15 Ohio St.3d 239, 255-256 (1984). "'An arrest occurs when the following four requisite elements are involved: (1) An intent to arrest, (2) under real or pretended authority, (3) accompanied by an actual or constructive seizure or detention of the person, and (4) which is so understood by the person arrested.'" *Tidwell* at *3, quoting *State v. Barker*, 53 Ohio St.2d 135, 139 (1978).

**{¶41}** Appellant's counsel asserted at oral argument that Chief Faustino and Patrolman First told very different stories at trial. Based on our review of the record, we disagree.

**{¶42}** As stated, BTPD received a call from Mr. D's regarding an individual attempting to cash a counterfeit check. Chief Faustino and Patrolmen First and Mann went to Mr. D's. They spoke with two females, one of which was attempting to cash a check. Both females had bad checks on them. The women were subsequently detained and placed in cruisers. The women advised the officers that they had been dropped off at Mr. D's in a silver car. The officers noticed a silver car that looked suspicious and out of the ordinary backed up outside in the parking lot.

{¶43} The officers drove their cruisers and surrounded the silver vehicle, effectively blocking any exit. Thus, it is apparent that the two occupants in the car [removed], a female and appellant, were not free to leave as their automobile was blocked in by police cruisers. *See State v. Lyons*, 11th Dist. Lake No. 99-L-067, 2000 WL 757739, *4 (June 9, 2000). Patrolman Mann remained with the female detainees. Patrolman First approached the driver's side of the silver car. Chief Faustino approached the passenger's side. The driver of the vehicle was a female. Patrolman First recognized the woman as being a suspect in a counterfeit check cashing incident the evening before and was aware that she had an outstanding warrant. Patrolman First requested the female driver to exit the vehicle. He observed a check inside her open purse that appeared to be the same type of check that was used the day before. The female driver was arrested and secured inside a cruiser.

{¶44} Appellant, who has a criminal history and was on federal parole, was seated in the passenger seat of the silver car. Patrolman First instructed appellant to exit the vehicle and speak with Chief Faustino. Appellant initially complied but he did not want to provide his last name, date of birth, or social security number. Appellant claims he was never told he was under arrest or not free to leave. However, during the time the officers were trying to identify appellant, Chief Faustino told appellant he was not free to leave. Also, the three police vehicles blocking the silver car and the circumstances presented further reveal appellant was not free to leave. *See Lyons, supra,* at *4. Based on the facts in this case, it is not realistic to conclude that appellant, like any reasonable person, felt free to leave and ignore the officers. *See Tidwell, supra,* at *3.

10

{**¶45**} [Moved down] Although appellant was not free to leave, Patrolman First observed appellant push or run into Chief Faustino and flee on foot. The officers chased after appellant. [Moved up] Chief Faustino caught up with appellant after appellant had slipped and fallen to the ground. Chief Faustino attempted to detain and arrest appellant at that point by grabbing appellant's left arm. Appellant, like any reasonable arrestee, believed or understood that an arrest was in the process of taking place by an officer under real authority. *See Tidwell, supra,* at *3. Nevertheless, Patrolman First saw appellant turn and strike Chief Faustino in the face causing injury, leading to the resisting arrest charge. Chief Faustino's face was red, sore, and puffed up on the cheekbone. His injury was tender to the touch and lasted around five days. Following the punch, appellant fled again. Patrolman First pursued appellant on foot and subdued him with a taser.

{**¶46**} Much discussion occurred during oral argument as to whether appellant in fact resisted arrest. In addition to the foregoing testimony which establishes appellant did resist arrest, we note the following jury instructions which further support the charge:

{**¶47**} "The Defendant is charged with Resisting Arrest. Before you can find the Defendant guilty, you must find beyond a reasonable doubt that on or about the 19th day of October, 2016, and in Trumbull County, Ohio, the Defendant, recklessly or by force resisted a lawful arrest of himself, and during the course of, or as a result of, the resistance or interference, caused physical harm to a law enforcement officer.

{**¶48**} "* * *

11

{¶49} "Resist.  Resist means to oppose, obstruct, hinder, impede, interrupt or prevent an arrest by a law enforcement officer by the use of force or recklessly by any means, such as going limp, or any other passive or indirect conduct.

{¶50} "Arrest.  Arrest means an intent to arrest; under real authority; accompanied by actual or constructive seizure or detention of the person, which is so understood by the person arrested.  The State must prove the arrest was in the process of taking place when the resistance or interference occurred." (Jury Trial T.p. 82-83).

{¶51} Pursuant to *Schlee, supra*, there is sufficient evidence upon which the jury could reasonably conclude beyond a reasonable doubt that the elements of resisting arrest were proven.  Thus, the trial court did not err in overruling appellant's Crim.R. 29 motion.

{¶52} Also, the jury chose to believe the state's witnesses.  *DeHass, supra*, at paragraph one of the syllabus.  Based on the evidence presented, as previously stated, we cannot say that the jury clearly lost its way in finding appellant guilty of assault on a peace officer and resisting arrest.  *Schlee, supra*, at *4-5; *Thompkins, supra*, at 387.

{¶53} Appellant's first and second assignments of error are without merit.

{¶54} For the foregoing reasons, appellant's assignments of error are not well-taken.  The judgments of the Trumbull County Court of Common Pleas are affirmed.


DIANE V. GRENDELL, J.,

TIMOTHY P. CANNON, J.,

concur.

12